# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**DONNA BRANDENBURG**,                                      Case No.

              Plaintiff,                                      Hon.

vs.

**MICHIGAN BOARD OF STATE CANVASSERS**;

**JOCELYN BENSON**, in her official capacity as Secretary of State; and

**JONATHAN BRATER**, in his official capacity as Director of

the Michigan Bureau of Elections,

              Defendants.

_____

Law Office of Daniel J. Hartman
Daniel J. Hartman (P52632)
Attorney for Plaintiff
PO Box 307
Petoskey, MI 49770
(231) 348-5100

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF ON CONSTITUTIONAL AND STATUTORY ISSUES,

A previous action has been filed in the Michigan Supreme Court in #164462 which was summarily rejected by an Order dated June 7, 2022, which considered and denied the relief for mandamus because the Court is not persuaded it should grant the relief sought.

NOW COMES, the above-named Plaintiff by and through her Counsel and for her complaint states as follows:

## INTRODUCTION

1. This case and controversy arising out of a final determination by the board of state canvassers that precludes Donna Brandenburg from participating in the August 2, 2022, Republican Primary as a candidate for Michigan Governor on the grounds that her nominating petitions were declared "insufficient".

2. Donna Brandenburg was one of five (5) Republican Gubernatorial Candidates and 18 other candidates (mostly Republican Candidates and some non-partisan judicial candidates) who the board of state canvassers has stated in a final administrative action are not permitted to have their names on the Republican primary ballot because of an alleged insufficient number of valid signatures.

3. The Board of State Canvassers deadlocked, and this inaction was interpreted, in violation of the presumption of signature validity, to instead support the Bureau of Elections staff recommendation—thereby delegating its authority to the Bureau of Elections.

4. Although putatively all candidates have the same statutory, due process, constitutional, and other legal arguments, Donna Brandenburg raised several

*unique facts* which distinguish her claims from the other candidates including:

a. The board of state canvassers did not even count all the signatures submitted by Donna Brandenburg. After the Board of State Canvassers deadlocked on the issue, the Director of the Bureau of Election located and identified the missing sheets of signatures but summarily rejected them without analysis except for removing sheets that the Bureau of Elections determined were invalid based only on the identity of the circulators.

b. In total the board of state canvassers counted 17,778 signatures initially despite receipts showing submission of an estimated 19,500 and second submission of an estimated 8000 totaling 27,500. More than 1/3 of the estimated signatures submitted are not addressed. No other candidate raises this issue.

c. The Director of the Bureau of elections admits that the Bureau of Elections only examined 1014 total signatures of those submitted by Donna Brandenburg (Page 17) in the first submission and 171 signatures in the second submission (Page 38 Paragraph 110). This is a total of 1185 out of the counted number of facial valid signatures 23,976

(using their count). Even if there was the statutory authority to remove these unchallenged signatures (there is not) then there remain 22,791 presumptively valid signatures that clearly exceed the 15,000 minimum requirement.

d. This is a total of 23,976 signatures that were *UNCHALLENGED* and 22,791 which were **NEVER COMPARED TO THE QVF (Qualified Voter File)**. This is checking a sample of less than 5% of the total and about 10% of the signatures submitted by the 19 suspected circulators. There was no evidence as to how the sample was selected.

e. No written sworn complaint was filed challenging signatures on the nominating petitions Donna Brandenburg filed. Other candidates received a sworn written complaint identifying specific signatures and the challenges to those signatures.

f. On information and belief, other candidates received a written complaint and challenge submitted before April 26, 2022, putting those candidates on notice that some of their signatures were under review. Donna Brandenburg was given no meaningful notice of the issue regarding challenges to the genuineness of signatures she submitted.

And she still has not been provided the information as to what signatures have been checked.

g. Only 2-3 signatures from all the signatures contained in the nominating petitions submitted by Donna Brandenburg were identified as being compared against the signature in the QVF per the *Review of Nominating Petition of Donna Brandenburg* dated May 23, 2022, and the *Staff Report on Fraudulent Nominating Petitions* dated May 23, 2022 (The "reports")

h. Only 2 circulators, Stephen Tinnin (1,156 signatures) and Niccolo Mastromatteo (43 signatures) were identified in the reports as participating in the 8 examples in Appendix 1 of the *Staff Report on Fraudulent Nominating Petitions* circulated nominating petitions submitted by Donna Brandenburg.

i. Nevertheless, the *Review of Nominating Petition of Donna Brandenburg* identified 19 circulators and 11,144 signatures that were not considered. There is no evidence these signatures (except the 2-3 referenced) were compared to the QVF for genuineness.

5. This is a complaint for declaratory and injunctive relief on certain constitutional issues and a request for an injunction preventing the Secretary

of State from proceeding with the certification of the election or printing ballots for the primary prior to a decision on the merits. This is accompanied by a request for expedited consideration and consolidation. This is also accompanied by a request for a temporary restraining order.

6. In the matter of the signatures contained in the nominating petitions submitted by Donna Brandenburg, there was no complaint or challenge made to any signatures submitted by her, so the process of review is discretionary under MCL 168.552(8).

7. Without a complaint the board has no authority to investigate or conduct a hearing on the validity of signatures. Deleeuw v State Bd of Canvassers, 263 Mich App 497, 502; 688 NW2d 847 (2004).

8. MCL 168.552(13) requires that when conducting an investigation pursuant to MCL 168.552 of the genuineness of any signature that the board of state canvassers MUST make direct comparisons to the QVF of signatures (or if not present to the signature on file at the local election office). The failure to follow this process during any investigation is a violation of a clear legislative duty. If the investigation is discretionary (such as when the complaint is filed untimely) the failure to follow this process would constitute an abandonment of a discretionary process.

9.  The failure of the board of state canvassers to follow MCL 168.552 (10) with a recheck by the city or township clerk of the comparison for determining genuineness is also a violation of clear statutory process and would constitute an ABANDONMENT of the discretionary investigation under MCL 168.552.

10. When there is an abandonment of the discretionary review of the genuineness of a signature, then the signature must be presumed valid—just as if there was no investigation.

11. Applying MCL 168.552 in its entirety to the signatures submitted by Donna Brandenburg and in light of the absence of a complaint, direct signature comparison, and a recheck by the local jurisdictional clerk, there is NO legal authority to reject any of the signatures.

12. The proper remedy will be declaratory relief that the constitutional rights of Donna Brandenburg to Due process were violated and the actions of the Board of Canvassers and the Bureau of Elections is a violation of the Separation of Powers and the remedy will be enjoining the Defendants from keeping Donna Brandenburg off of the ballot and causing her to be included on the August 2, 2022, primary ballot.

13. While not all of the authorized acts identified in MCL 168.552 are required (some are discretionary tasks) it is clear that all of the acts are ministerial. The failure to perform these is a violation of due process.

14. When there is no legislative authority for an action, the action is *ultra vires* and is an unconstitutional exercise of executive authority and a violation of the doctrine of separation of powers which requires the legislature to grant authority of the executive branch to act. This doctrine is present in both the federal and state constitutions.

15. Donna Brandenburg seeks declaratory relief on statutory overreach and certain *ultra vires* actions committed which exceed the statutory authority by the board of state canvassers which include:

    a. The commencement of an *investigation* of the genuineness of signatures is mandatory on the filing of a complaint

    MCL 168.552 (8) (clause 2)
    *If the board of state canvassers receives a sworn complaint*, in writing, questioning the registration of or the genuineness of the signature of the circulator or of a person signing a nominating petition filed with the secretary of state, the board of state canvassers **shall commence an investigation**.

    b. The conduct of a *hearing* on the genuineness of the signatures is discretionary but only authorized by the legislature after a sworn complaint is filed in writing.

MCL 168.552 (9) [In part]
The board of state canvassers *may hold a hearing* upon a complaint filed or for a purpose considered necessary by the board of state canvassers to conduct an investigation of the petitions.

The hearing is discretionary upon a complaint filed or to conduct an investigation on a complaint filed. There is no other grant of authority by the legislature to the board of state canvassers to conduct a hearing on a nominating petition submission.

c.  Creation of a novel procedure to "sample" signatures and to extrapolate these samples to all signatures gathered by the circulator—which was even extended to petitions submitted by a different candidate.

d.  Creation of a remedy not authorized by statute. The novel remedy was to strike all signatures submitted by a circulator deemed unworthy by the Bureau of Elections and to abandon the stautory requirement to check each signature.

The invalidity of 1 or more signatures on a petition does not affect the validity of the remainder of the signatures on the petition. MCL 168.544(c)(2).

e.  A determination was made by the board of state canvassers that a deadlock vote of 2-2 by the board of state canvassers was action declaring the petitions insufficient and creating a presumption of

validity in the staff report *Review of Nominating Petition of Donna Brandenburg* dated May 23, 2022, rather than the actual presumption of validity of the signatures. This was an improper delegation of authority to the Director of the Bureau of Elections and his staff to decide the issue. The law requires the presumption of validity to be followed. <u>Deleeuw v State Bd of Canvassers</u>, 263 Mich App 497, 502; 688 NW2d 847 (2004).

f. A determination that signatures were "fraudulent" authority for making the determination in the statute is not permitted by law. <u>Deleeuw v State Bd of Canvassers,</u> 263 Mich App 497, 502; 688 NW2d 847 (2004).

  i. The only provision for determining a signature to be fraudulent is under MCL 168.544c which requires a crime to be committed.

  ii. The crimes that are sufficient to determine are violations of MCL 168.544c (8), (10) or (12).

  iii. The crimes essentially require an individual to sign as someone another individual or to make a false statement in the certification.

  iv. The determination of obvious fraud is only permitted after a hearing conducted pursuant to MCL 168.552 which can only be

conducted after a sworn written complaint is filed and an investigation commenced. MCL 168.544c (11) and (13)

v. The conclusion of "fraud" was reported by the Bureau of Elections which has tainted all candidates causing prejudice to their campaigns when picked up and repeated by the media and public.

vi. As to Donna Brandenburg, there was no complaint, no proper investigation, and no hearing on the investigation or complaint and so there can be no finding of fraud.

16. Donna Brandenburg requests declaratory relief on Federal and State constitutional issues including:

a. Procedural Due Process

b. Substantive Due Process

c. Violation of Separation of Powers Doctrine

d. Violation of Equal Protection Clause

e. That there was no finding that signatures were submitted by her that have been determined to be fraudulent.

17. While other candidates are advancing legal arguments, pursuing different legal strategies, and have filed at different times and places, there are some legal issues that will overlap and some which will be advanced and presented

uniquely. Donna Brandenburg has a right to consideration of her legal issues independently of other candidates.

## JURISDICTION

18. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Donna Brandenburg's claims arise under the First and Fourteenth Amendments of the United States Constitution, the Separation of Powers clause and 42 U.S.C. § 1983.

19. This Court has personal jurisdiction over the Defendants because they are public officials of the State of Michigan and they are residents of Michigan. This Court is a proper venue for this civil action under 28 U.S.C. § 1391. 19.

20. Venue is proper in this Court because Donna Brandenburg is a resident of the Western District of Michigan, and because the Defendants are state officials who maintain offices throughout the State of Michigan. See Bay County Democratic Party v. Land, 340 F. Supp.2d 802 (E.D. Mich. 2004)

## THE PARTIES

21. Plaintiff Donna Brandenburg is a Michigan resident who filed as a Republican candidate for the Office of Governor on the August 2, 2022, primary ballot.

22. Defendant Board of State Canvassers is a four-member public body created by the Michigan Constitution of 1963 Article 2 Section 7 and by MCL168.22. The Board of State Canvassers has two Republican and two Democratic representatives who are appointed by the governor.

23. Defendant Jocelyn Benson is the Michigan Secretary of State. The Secretary of State is a publicly elected position created by the Michigan Constitution of 1963 in Article 3 Section 21. The Michigan Secretary of State supervises the Director of the Board of Elections.

24. Defendant Jonathan Brater is Michigan's Director of the Bureau of Elections and is vested with the executive authority to administer Michigan's election laws under the supervision of the Secretary of State. MCL 168.32(1). The Director of the Board of Elections provided staff support for the board of state canvassers and created many of the processes at issue in the case.

## FACTUAL BACKGROUND

25. Donna Brandenburg is a valid candidate for the office of Governor.

26. Donna Brandenburg announced she was seeking the office of governor.

27. Nominating petitions were circulated to put Donna Brandenburg on the August 2, 2022, Republican primary ballot.

28. As is the custom and practice of candidates for office both volunteer and paid circulators were engaged in the process. Donna used two separate

petition circulating companies as well as volunteers for circulating her petitions.

29. The original filing, Donna Brandenburg submitted approximately 19,500 signatures dated April 14, 2022, along with her Affidavit of Identify and her filing fee.

30. In the supplemental receipt of filing, Donna Brandenburg submitted approximately 8000 signatures on 886 pages dated April 19, 2022.

31. Both submissions of nominating petitions were timely made. This is not contested.

32. In total, the estimated signatures of 27,500 were significantly more than the 15,000 minimum and less than the maximum allowed of 30,000.

33. One of those companies has been accused of fraudulently obtaining signatures. The first report of this problem was made on May 23, 2022, in the *Staff Report on Fraudulent Nominating Petitions (Staff Report)* attached as <u>Exhibit 1</u>.

34. The secretary of state published a staff report directly about Donna Brandenburg petitions on May 23, 2022, which is attached as Exhibit 2 and titled a *Review of Nominating Petitions Donna Brandenburg (Review)* dated May 23, 2022. This *Review* only consisted of a total of two pages.

35. The *Review* started with identifying only 17,778 signatures. This count was reported to have been determined before any of the ministerial duties involved in determining the (1) facial validity of the signatures and (2) the qualification or registration of the signers as this was the process identified in Section III of the *Staff Report*.

36. The candidate Donna Brandenburg submitted approximately 27,500 signatures. The absence of these 10,000 signatures was raised to the board of state canvassers on May 26, 2022, and never resolved.

37. This failure to account for all timely submitted nominating petitions is unconscionable as this is the first requirement that the Bureau of Election MUST accurately count all submitted signatures.

38. The Bureau of Elections located the missing sheets of signatures AFTER May 26, 2022, and summarily rejected sheets submitted by certain circulators.

39. The Board of State Canvassers has never considered the missing signatures

40. This still does not resolve the fact that the *Review* somehow discounted her original submission of 19,500 estimated signatures by 1800.

41. This failure of the initial minitrial duty to identify the starting number correctly is a tremendous problem for the credibility of the entire *Review*.

42. The failure to address the issue of the missing signatures with a response after it was raised is flagrant Nonfeasance and Malfeasance of office.

43. The *Staff Report* focused on a novel process which was described in *Section III Processing Petition Sheets*.

44. The process was summarized by a member of the board of state canvassers as "unique and on the fly."

45. On information and belief, a hearing of the board of state canvassers on May 2, 2022, reviewed the process that was to be used to verify signatures after the complaints challenging other candidates' signature submissions were filed and responded to by the candidates who received a sworn written challenge prior to April 26, 2022.

46. Donna Brandenburg was not subject to a sworn written complaint challenging any of her signature submissions and was not present at the hearing.

47. On information and belief, the Director of the Bureau of Elections assured the candidates and the board of state canvassers that every signature on every petition would be compared to the QVF.

48. The new process actually employed was simply to remove all signatures submitted by certain circulators that the Director of the Bureau of Elections deemed had submitted fraudulent signatures.

49. The new process would only canvass signatures if the remainder exceeded the 15,000-signature statutory requirement.

50. This new process violates the chapter XXIV of the Michigan Election code and in essence makes the Director of the Bureau of Elections the sole arbiter of which circulators collect signatures—and after the fact.

51. In short, the new process failed to either consider signatures individually or to canvass signatures--which is the primary statutory duty of the board of state canvassers.

52. In the case of Donna Brandenburg, the application of this process per their *Review* removed 11,144 collected by 19 paid circulators and per the Director of the Bureau of Elections made Donna Brandenburg ineligible to be on the primary ballot.

53. The only material issue raised as to signatures on nominating petitions submitted by Donna Brandenburg was whether any of 19 of the identified circulators obtained fraudulent or invalid signatures.

54. No evidence was presented of any individual actually signing a name other than their own in violation of MCL 168.544c (8) or signing multiple names in violation of MCL 168.544c (10). In addition, no evidence was presented of a circulator making a false certification in violation of MCL 168.544c (8).

55. All other issues, (1) facial validity or (2) qualification of the elector; or (3) registration of electors in the proper jurisdiction were NEVER addressed in a canvass (excluding the two voters identified in the *Review*).

56. The *Review* reports one signature was claimed as being associated with a deceased voter and another with a voter who had moved from the address. These two signatures raise a suspicion that someone had signed the names inappropriately. Donna Brandenburg has not investigated the report related to these two signatures due to the abbreviated response time.

57. At this point, these issues must be deemed as waived in that a canvass was not completed timely. This is particularly true when no sworn complaint challenged any of the signatures submitted by Donna Brandenburg at any time.

58. There is no duty to consider the genuineness of a signature that is unchallenged or is challenged after April 19, 2022.

59. No evidence was submitted by the Director of the Bureau of Elections of any comparisons *between* the signature on ANY of the nominating petitions and the signature on file in the QVF beyond 2-3 signatures referenced in the reports.

60. In fact, there is no list of signatures (or other records) that signatures submitted by Donna Brandenburg were even canvassed for facial validity,

for qualifications, for proper registration or for genuineness by individual comparison to the QVF.

61. At the May 26, 2022, hearing, it was conceded by the Director of the Bureau of Elections that only 'representative signatures' were examined referred to as 'targeted reviews''.

62. To add insult to injury the Director of the Bureau of Elections Director then stated on May 26, 2022, hearing that the total amount checked signatures against the QVF (7000 among all candidates) were determined invalid *without* providing the selected signatures or supporting evidence to support the 7000 claim that could be reviewed by the candidates.

63. The *Staff Report* states on page 16 that tally sheets exist which were not provided or presented at the hearing.

64. There was no evidence presented that any portion of the estimated 7000 claimed comparisons were specifically to the Donna Brandenburg nominating petitions.

65. Donna is prejudiced uniquely in that some other candidate had notice of challenges to their signatures on April 26, 2022. No challenge was filed to any of the signatures on any nominating petition submitted by Donna Brandenburg.

66. Any challenge to the signatures was made *sua sponte* by the staff of the board of elections based on the unilateral determination by the Director of the Bureau of Election that all signatures collected by certain circulators would be rejected wholesale.

67. There is no legislative authority for this act or process. A challenge on a doubtful signature has a legislatively mandated procedure that was not followed.

68. The challenge is REQUIRED to be filed with a written complaint sworn under oath. MCL 168.552 (8) (But may be disregarded if filed after April 26, 2022 or fails to specify the signatures which are challenged.)  MCL 168.552 (8)

69. Only after a valid challenge is their legislative authorization for the board of state canvassers to conduct a hearing to resolve the *challenge*. Deleeuw v State Bd of Canvassers, 263 Mich App 497, 502; 688 NW2d 847 (2004).

70. A single 8-hour hearing was held on May 26, 2022, to consider the nominating petitions of all candidates.

    a. No evidence was submitted related to any signature submitted by Donna Brandenburg except the reports.

    b. Conclusions and general statements were made by the Director of the Bureau of Elections.

    c.   The board of state canvassers did not subpoena any witnesses

    d.   The board of state canvassers relied primarily upon the reports prepared by the Director of the Bureau of Elections and his staff comments and process descriptions during the hearing.

    e.   The sworn testimony was not of any witnesses to the signature-gathering but was instead used to place comments made by the board, the Staff, candidates, challengers, and the public under oath.

    f.   These comments were then considered as evidence under oath even though the comments were merely comments and arguments.

    g.   No real hearing was conducted that resembled the purposes or procedures of MCL 168.552 (8-12).

71. The board of state canvassers deadlocked 2-2 on party lines when asked to address the signatures submitted by Donna Brandenburg.

72. Without a majority of the board of state canvassers acting there is no action. This is a final determination (the determination not to act).

73. However, this deadlock was interpreted by the state board of canvassers as advised by the Director of the Bureau of Elections, as a ruling that the petition was insufficient as reported by his team.

74. This deadlock interpretation means that in effect, the Bureau of Elections made the determination of the sufficiency of the number of valid signatures submitted by Donna Brandenburg.

75. To be clear a 2-2 deadlock means merely that the board could not agree either that the signatures were invalid.

76. It is not acceptance of the report of the Bureau of Elections by default.

77. The presumption of the signature validity is controlled when the board is deadlocked or fails to act and therefore Donna Brandenburg must be placed on the primary ballot. Deleeuw v State Bd of Canvassers, 263 Mich App 497, 502; 688 NW2d 847 (2004).

78. Donna Brandenburg was limited in her participation at the hearing due to time constraints to about a half an hour to present her response—this is after not having notice of the challenge, an opportunity to investigate or even prepare for her limited time to respond.

79. Donna Brandenburg did not receive individual consideration rather she was lumped together with other candidates in the board of state canvassers' deadlocked vote.

80. During the May 26, 2022, hearing, the timeline concerning the time left to print the ballots was raised suggesting that the urgency required Donna

Brandenburg to act expeditiously with mere days left before the printing of the ballots.

81. The board of state canvassers and the bureau of elections began working in silence on the circulator issue in March, so they had more than six weeks to prepare for the hearing.

82. There was an abundance of time to issue a public advisory (or other direct notice to known candidates) which could have alerted candidates to the specific problem circulators as they were identified.

83. Timely notice could have been made more than 3 weeks before the deadline of April 19, 2022, and with sufficient time for candidates to replace the signatures circulated by questioned individuals. This is patently unfair to withhold notice to the campaigns and the public that a threat to the veracity of the election process was actively occurring.

84. Donna Brandenburg was not advised that any of the circulators who gathered signatures were under suspicion any time prior to April so that she could review her submissions or validate signatures. Even though Donna Brandenburg lacked access to a QVF she could have instigated some of the signatures as other candidates were able to with some fair notice.

85. The board of state canvassers and the Director of the Bureau of Elections know that the primary election process begins immediately with the

certification of candidates followed by the printing of primary ballots and
could have acted to provide notice sooner. This is a lack of good faith.

86. The delayed notice has prejudiced Donna Brandenburg and both a violation
of procedural and substantive due process.

87. An injunction on the printing of ballots must be entered. This primary
election process needs to be halted until after the resolution of these claims.

88. The claims must be considered with a fair opportunity to address and not be
unfairly pressured to rush the resolution of valid issues raised herein

89. Therefore, an expedited hearing is requested and required.

90. At the present time, the Director of the Bureau of Elections has submitted an
affidavit (attached as Exhibit 3) of the following facts:

1) The Bureau of Elections admits that it "lost" the second submission of
petition sheets and then rediscovered them on June 3, 2022. (Page 65-36
Paragraphs 100-104)

2) The Director of the Bureau of elections admits that they only examined
1014 total signatures of those submitted by Donna Brandenburg (Page 17) in
the first submission and 171 signatures in the second submission (Page 38
Paragraph 110). This is a total of 1185 out of the counted number of facial
valid signatures 23,976 (using their count). Even if there was the statutory
authority to remove these unchallenged signatures there remain 22,791

presumptively valid signatures that clearly exceed the 15,000 minimum requirement.

 3) The Bureau of Elections staff found the petitions and were able to count, review and report them in a few hours and ***ON THE SAME DAY.*** (Page 37-38 Paragraphs 106-110). This is significant because after they began in March, all the way through April 19, 2022, the filing deadline, all the way through the April 26, 2022 challenge deadline, to the May 23, 2022 staff report the Bureau was unable to count evaluate and report any concern to the candidate on notice so that she would have time to investigate or rebut the unchallenged *sua sponte* claims of fraud.

91. This is a total of 23,976 signatures that were ***UNCHALLENGED*** and 22,791 which were **NEVER COMPARED TO THE QVF**. This is checking a sample of less than 5% of the total and about 10% of the signatures submitted by the 19 suspected circulators. There was no evidence as to how the sample was selected.

92. Again, there is no identification of the signatures or pages that were supposedly checked so there is no way for the candidate, the board of state canvassers, or this Court to review the Board of Election staff conclusions—

even if there was time remaining to do so as would be required by due process and fundamental fairness.

## COUNT I- Declaratory and Injunctive Relief

93. The plaintiff realleges all of the preceding paragraphs as if alleged here.

94. Donna Brandenburg has a clear legal PROCEDURAL right to the performance of the duty sought to be compelled, to wit:

    a.  the certification of her eligibility to be on the primary ballot and the determination that her nominating petitions were sufficient.

    b.  The counting of all the signatures that were submitted and to account for both submissions in the total signatures.

    c.  The consideration of all of her submissions at the May 26, 2022 hearing by the board of state canvassers.

    d.  The application of the *presumption of validity* to signatures that were not determined invalid for lack of genuineness pursuant to MCL 168.552 which were:

        i.  Subject to a sworn and written complaint and

        ii.  Subject to a statutorily authorized investigation, and

        iii.  Subject to a statutorily compliant process of direct comparison of *each* signature to the QVF (or if the signature is not in the QVF the local registration record).

        iv.  The right to have questioned signatures re-checked by the local

           clerk

     e.  The proper application of the presumption of validity when the board

       of state canvassers deadlocks and placement on the primary ballot.

95. The defendant board of state canvassers has a clear legal duty under

Michigan Election Law chapter XXIV.

96. All of these actions are ministerial in nature such that it involves no

discretion or judgment.

97. Violation of these duties entitles the Plaintiff to injunctive and declaratory

relief.


## COUNT II-DUE PROCESS:

98. Plaintiff realleges and incorporates the above paragraphs as if fully set forth

in this Count.

99. Donna Brandenburg has a right to seek office which is protected by the "due

process "clauses of both the Michigan and United States Constitutions. Us

Constitution Amendment V and XIV, Michigan Constitution 1963, Art

1§17.

100.    The thousands of voters who exercised their right to sign petitions in

support of Donna. Brandenburg have a constitutional right to have their

preference counted pursuant to the Michigan Constitution and statutory and decisional law.

101.     Brandenburg's right to due process requires at a minimum "notice and opportunity to be heard.

102.     The procedural irregularities include:

a. The board has not considered all of the signatures submitted by Donna Brandenburg and never considered the signatures subsequently found

b. The board has not accounted to or responded to the Brandenburg receipts which show a submission estimated to be about 10,000 more signatures that were counted and the request they confirm that they canvassed the second submission.

c. Brandenburg received insufficient notice less than 2 days and no meaningful right to be heard.

d. The board provided no notice that it would divert from utilizing MCL 168.522 to disqualify nominating petitions.

e. On May 2,2022 at a public meeting the Board represented that no nominating signature would be disqualified without a comparison to the OVF. See You Tube Video of the Board of State Canvassers, public meeting for May 2, 2022.

f.  There was never a complaint filed against Brandenburg therefore there is no process for the board of state canvassers to conduct an investigation or hearing onto the genuineness of the signatures submitted.

g.  The legislature declined to authorize the board of state canvassers expressly to initiate their own investigation absent a complaint.

h.  The process to determine the sufficiency of the signatures which was adopted as explained in Section 3 of the *Staff Report* adopted a new process not authorized by statute and fashioned a new remedy not authorized by statute.

i.  The process in which the signatures were not directly compared to the QVF (or if not present the local election record)

j.  The process in which no fact witnesses were presented at the hearing or subpoenas issued to establish claimed fraud and the board of state canvassers relied upon the conclusions of staff.

103.  There is no fundamental fairness in denying Donna Brandenburg and the voters who signed her petition the opportunity to participate in the August Primary.

104.     The conduct of the Defendants violated Donna Brandenburg's right to procedural and substantive due process" under the Michigan and Federal Constitutions.

## COUNT III- VIOLATION OF MICHIGAN CONSTITUTION 2, § 4(2)

105.      Plaintiff realleges and incorporates the above paragraphs as if fully set forth in this Count.

106.     The purity of elections clause in art 2, § 4(2) of the Michigan Constitution demands "fairness and evenhandedness in the election laws of this state." Socialist Workers Party v Secretary of State, 412 Mich 571, 598; 317 NW2d 1 (1982). It requires that "every elector's franchise [be] of equal value to every other elector," such that "every elector has an equal voice in the choice of those who shall represent the people." Maynard v Bd of Dist Canvassers, 84 Mich 228, 240-242; 47 NW 756 (1890).

107.     The legislature has implemented the purity of elections clause by codifying MCL 168.552 as a way of preventing the Executive branch from arbitrarily eliminating petition signatures and disenfranchising voters and candidates.

108.    The Board by permitting the so-called" targeting sampling" has overstepped its authority and infringed on the power of the legislature breaching the "separation of powers" of the state's branches of government.

109.    In the event the Board can not apply the existing statutory scheme, the only remedy to protect Donna Brandenburg and those voters who exercised their constitutional rights by signing primary nominating petitions is to place Plaintiff Donna Brandenburg on the Republican Gubernatorial Ballot.

110.    The violation of the Michigan statutes and Michigan Constitution is a violation of protections guaranteed in the law. These state statutory and state constitutional violations are violations of due process which is guaranteed by the US Constitutional.

**COUNT IV: Violation of the Separation of Powers Doctrine**

111.    Plaintiff realleges and incorporates the above paragraphs as if fully set forth in this Count.

112.    The board of state canvassers cannot take action that is not authorized by law. The authority derives from laws passed by the legislature.

113.    The board of state canvassers did in fact make up a new process and remedy and used this to disqualify the signatures submitted by Donna Brandenburg.

114.    The board of elections ignored or refused to follow statutes that have

been established by the legislature

## COUNT V EQUAL PROTECTION

115.    Plaintiff realleges all the above paragraphs as if fully set forth in this

count.

116.    The Plaintiff is entitled to equal protection under the laws, and this

requires that the application of the laws must meet a standard that is

uniform.

117.    The application of an arbitrary and capricious standard for

determining signature validity from a target sample fails to meet an objective

standard and was applied in an unequal manner.

118.    Members of the same party were provided different standards for the

application of the determination of the genuineness of signatures.

119.    Donna Brandenburg was selected for enforcement without a sworn

complaint in writing challenging the validity of signatures when other

candidates without a complaint did not have their submission considered

insufficient.

120.    On information and belief, there was an unequal application of law.

121.    The Michigan Election Law specifically MCL 168.544c and MCL

168.552 are unconstitutional in that if interpreted correctly by the board of

canvassers is vague or overboard in the powers delegated and without sufficient standards.

## COUNT VI: Declaratory Relief

122.    Plaintiff realleges and incorporates the above paragraphs as if fully set forth in this Count.

123.    The plaintiff is entitled to a clear statement that there was no process to find or finding of fraud in the signatures that Donna Brandenburg submitted, and that this determination is outside the scope of the authority of the board of state canvassers.

124.    The plaintiff is entitled to a clear statement of the legal duties the board of state canvassers is obligated to perform.

125.    The plaintiff is entitled to a clear statement of the limits of the authority the board of canvassers is obligated to perform.

126.    The plaintiff is entitled to a clear statement of the procedural process the board of state canvassers is required to follow in evaluating signatures.

127.    The plaintiff is entitled to a clear statement of the demarcation of the power of the executive branch and the legislative branch.

128.    Donna Brandenburg requests this court declare what the effect of deadlock by the board of state canvassers means as to the presumptive

validity of the signatures and as to whether this is a ratification of the Bureau of Election report, recommendations, and conclusions.

## COUNT VI CONSTITUTIONAL REQUIREMENTS ARE THE ONLY REQUIREMENTS

129.    Plaintiff realleges and incorporates the above paragraphs as if fully et forth in this Count.

130.    The Michigan Constitution sets the requirements for Governor

131.    There is no authority of the legislature to require additional requirements.

132.    There is no authority of the executive branch to require additional administrative requirements.

133.    All such requirements of the legislature or executive branch are void as they lack the authority to alter the Michigan Constitution.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Donna Brandenburg respectfully requests this Court:

A. Grant Declaratory and Injunctive Relief and order the failure to consider the missing signatures that are not accounted for in the *Review* by the board of state canvassers is a violation of due process as applied to Donna Brandenburg:

B. Declare that delegation to the Bureau of Elections does not satisfy their statutory duty.

C. Grant Declaratory and Injunctive Relief and order Donna Brandenburg be certified and appear on the August 2, 2022, Primary Ballot for the Republican Party;

D. Order an expedited hearing on the merits of the complaint to be completed by June 3, 2022 and enter a scheduling order pursuant to MCL168.479;

E. Enter an order extending the certification of the election, and prohibiting the printing of ballots until further order of the court;

F. Provide declaratory relief on the process, duties, and limits of authority of the board of canvassers and the Director of the Bureau of Elections especially as to the effect as to the deadlock of a vote by the board of state canvassers.

G. Declare that the board of state canvassers violated the constitutional rights of Donna Brandenburg and the persons who signed her petitions

    a. A violation of federal and Michigan due process substantive and procedural.

    b. A violation of the purity clause of the Michigan Constitution

    c. A violation of the Separation of Powers Doctrine

    d. A violation of Equal protection

e.  An unconstitutional limit on the Michigan Constitutional requirements contained being added by legislative and executive action without the authority to amend or supplement the Michigan Constitution.

Respectfully Submitted,

Dated: June 16, 2022

By: /s/Daniel J. Hartman (P52632)
Attorney for Plaintiff

## VERIFICATION

I, Donna Brandenburg declare that the above statements are true to the best of my information, knowledge, and belief.

June 16, 2022

Signed:_____

State of Michigan

County of_____

On this 16th day of June,2022 before me, a Notary Public, in and for said County, personally appeared before me the above Donna Brandenburg, and made oath that she has read the foregoing Complaint and acknowledged the same to be her free act and deed.

_____ _____, Notary Public County of _____ Acting in_____County

36