**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**DONNA BRANDENBURG**, Case No.

Plaintiff, Hon.

vs.

**MICHIGAN BOARD OF STATE CANVASSERS**;

**JOCELYN BENSON**, in her official capacity as Secretary of State; and

**JONATHAN BRATER**, in his official capacity as Director of the Michigan Bureau of Elections,

Defendants.

---

LAW OFFICE OF DANIEL J. HARTMAN
Daniel J. Hartman (P52632)
Attorney for Plaintiff
PO Box 307
Petoskey, MI 4977-
(231) 348-5100
danjh1234@yahoo.com

---

**BRIEF IN SUPPORT OF PLAINTIFF'S VERIFIED COMPLAINT FOR INJUNCTIVE AND FOR DECLARATORY JUDGMENT ON CONSTITUTIONAL AND STATUTORY ISSUES; CERTIFICATION**

# Table of Contents


**STATEMENT OF THE BASIS FOR JURISDICTION** .....................................1

**PLAINTIFF IS ENTITLED TO INJUNCTIVE AND DECLARATORY BECAUSE THE BOARD OF CANVASSERS FAILED TO COUNT ALL SIGNATURES SUBMITTED IN SUPPORT OF HER NOMINATION TO THE PRIMARY BALLOT.** ..........................................................................10

**PLAINTIFF IS ENTITLED TO DECLARATROY AND INJUNCTIVE RELIEF BECAUSE THE BOARD OF CANVASSERS DID NOT HAVE AUTHORITY TO CHALLENGE THE GENUINENESS OF SIGNATURES WITHOUT A SWORN AND WRITTEN COMPLAINT** ...12

**PLAINTIFF WAS DENIED PROCEDURAL AND SUBSTANTIVE DUE PROCESS IN VIOLATION OF FEDERAL AND MICHIGAN LAW AND IS ENTITLED TO DECLARATROY AND INJUNCTIVE RELIEF**..........16

*The Sanction for "Obviously Fraudulent Signatures": What does it really mean?* ..........................................................................................................20

*Fundamental Fairness* ..........................................................................................25

*The Importance of Impartiality for Due Process* ............................................26

**DONNA BRANDENBURG IS ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF AS TO WHETHER THERE WAS SUFFICIENT EVIDENCE PRESENTED TO THE BOARD TO DETERMINE SIGNATURES WERE FRADULENT.** ...........................................................27

**THE DEADLOCK OF THE BOARD IS A DETERMINATION THAT THE SIGNATURES ARE PRESUMED VALID DUE TO ITS INACTION AND THEREFORE, ANY OTHER RESULT OTHER THAN PUTTING DONNA BRANDENBURG ON THE PRIMARY BALLOT IS A VIOALTION OF DUE PROCESS** ..................................................................29

**CONCLUSION** ...........................................................................................31

**Cases**

Bay County Democratic Party v. Land, 340 F. Supp.2d 802 (E.D. Mich. 2004)......1
Deleeuw v State Bd of Canvassers, 263 Mich App 497, 502; 688 NW2d 847 (2004) ....10, 11
Deleeuw, supra ....14
MCL 168.552(8)....10, 13, 14
McQuade v Furguson, 91 Mich 438 (1892). ....13
US Term Limits, Inc v Thorton, 514 US 779 (1995) ....24

**Statutes**

168.544c ....26
28 U.S.C. § 1331 ....1
28 U.S.C. § 1391. 19 ....1
42 U.S.C. § 1983 ....1
Chapter XXIV of the Michigan Election code ....25
MCL 168.544 (11)....16
MCL 168.544(c) ....22
MCL 168.544c....26
MCL 168.544c (11) ....16
MCL 168.544c(11). ....iv, 14
*MCL 168.544c(12)* ....17
MCL 168.544c(2). ....9
MCL 168.544c(8) or (10). ....18
*MCL 168.54c(13)* ....17
MCL 168.552 (8-13) ....14
MCL 168.552(13)....19
MCL 168.552(13)....17
MCL 168.552(8)....8, 18
MCL 24.201 et seq ....15

## STATEMENT OF THE BASIS FOR JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Donna Brandenburg's claims arise under the First and Fourteenth Amendments of the United States Constitution, the Separation of Powers clause and 42 U.S.C. § 1983.

This Court has personal jurisdiction over the Defendants because they are public officials of the State of Michigan, and they are residents of Michigan. This Court is a proper venue for this civil action under 28 U.S.C. § 1391. 19.

Venue is proper in this Court because Donna Brandenburg is a resident of the Western District of Michigan, and because the Defendants are state officials who maintain offices throughout the State of Michigan. See *Bay County Democratic Party v. Land*, 340 F. Supp.2d 802 (E.D. Mich. 2004)

## STATEMENT OF QUESTIONS PRESENTED

I. Whether the Plaintiff is entitled to a declaratory and injunctive relief because the Board of Canvassers violated substantive and procedural due process protection when they failed to count all signatures submitted in support of her nomination to the primary ballot?

Plaintiff Answers: YES
Defendants would: NO

II. Whether the Plaintiff is entitled to a declaratory and injunctive relief when the board of canvassers did not receive a sworn and written complaint to trigger action and acted without statutory authority?

Plaintiff Answers: YES
Defendants would: NO

III. Whether the Plaintiff was denied procedural and substantive due process in violation of Federal and Michigan law in the process/procedure, the notice and the time constraints to review the process?

Plaintiff Answers: YES
Defendants would: NO

IV. Whether Plaintiff is entitled to declaratory and injunctive relief that her signatures on the petitions are to be presumed valid when the board of canvassers deadlocked?

Plaintiff Answers: YES
Defendants would: NO

V. Whether Plaintiff is entitled to declaratory and injunctive relief when the Michigan Constitution provides the requirements for a candidate for Governor and the legislative or executive branches seek to add additional requirements?

Plaintiff Answers: YES
Defendants would: NO

## STATEMENT OF FACTS

Republican Candidate for Governor Donna Brandenburg submitted approximately 27,500 signatures. The absence of counting of approximately 8,000-signatures was brought to the attention of the board of state canvassers on May 26, 2022. To date the board of canvassers has never reviewed the signatures. This is unconscionable as this is the first requirement that the Bureau of Election can accurately count all submitted signatures.

The Bureau of Elections, subsequent to the filing of the Plaintiff's complaint in the Michigan Supreme Court, located the additional signatures and was able to process them in one day. However, the Bureau of Elections rejected the majority of the additional signatures without a written sworn complaint and without doing any signature comparison based solely on the circulators identified on the petition sheets. This decision was never presented to the Board of State Canvassers to this date.

However, the *Staff Report* which was issues on May 23, 2022 did not discuss the second submission by oversight but it did provide some information on the unconstitutional process. The *Staff Report* focused on a novel process which was described in *Section III Processing Petition Sheets*. It was summarized by a member of the state board of canvassers as "unique and on the fly." The process was simply to remove all signatures submitted by certain circulators as fraudulent

and then only canvass signatures that exceeded the 15,000-signature requirement. In short, they failed to either consider signatures individually or to canvass signatures.

In the case of Donna Brandenburg, the application of this process per their *Review* removed 11,144 collected by 19 paid circulators.

The only material issue raised as to signatures on nominating petitions submitted by Donna Brandenburg was whether any of 19 of the identified circulators obtained fraudulent or invalid signatures. No evidence was presented of a signer signing a name other than their own in violation of MCL 168.544c (8) or signing multiple names in violation of MCL 168.544c (10) In addition, no evidence was presented of a circulator making a false certification in violation of MCL 168.544c (8). One signature was claimed as being associated with a deceased voter and another with a voter who had moved from the address. These two raised a suspicion that someone had signed the names inappropriately. No evidence was submitted of any comparisons between the signature on the nominating petitions and the signature on file in the QVF but the issue of qualified and properly registered was reported which likely came from information contained in the QVF.

All other issues, (1) facial validity or (2) qualification or (3) registration of electors, were not addressed (excluding the two voters identified in the *Review)*.

These issues must be deemed as waived in that a canvass was not completed timely, and the election deadline looms.

In fact, no list of challenged signatures was ever provided and there seems to be no other records that signatures were even EVALUATED by individual comparison to the QVF or for failing to meet any other standard as to Donna Brandenburg. At the hearing, it was conceded that only 'representative signatures' were examined referred to as 'targeted reviews." To add insult to injury the Bureau of Elections Director then stated at the May 26, 2022 hearing that the total amount checked signatures against the QVF (7000 among all candidates) were determined invalid without providing evidence to support the claim that could be reviewed by the candidates. The *Staff Report* though states that there exist tally sheets which were not provided nor presented at the hearing. There was no evidence presented that any portion of the 7000 claimed comparisons were specifically to the Donna Brandenburg nominating petitions.

No challenge was filed to any of the signatures on any nominating petition submitted by Donna Brandenburg. Any challenge to the signatures was made *sua sponte* by the staff of the board of elections based on their determination of fraud. There is no precedent for this action. A challenge on a doubtful signature has a legislative mandate procedure that was not followed. The challenge is to be filed with a written complaint sworn under oath before April 26, 2022, and specify the

signatures which are challenged. Then an investigation or hearing to resolve the challenge is established by statute. Instead, the state board of canvassers acted like a court considering a lawsuit without a pleading being filed and without providing a fair opportunity to respond.

A single 8-hour hearing was held on May 26, 2022, to consider the nominating petitions of all candidates. No evidence was submitted related to any signature. Conclusions and general statements were made by the Director of the Bureau of Elections. The board of canvassers did not subpoena any witnesses and instead relied upon the summaries prepared by the staff and their comments. The sworn testimony was not of any witnesses to signature gathering but was instead comments made by the board, the Staff, candidates, challengers, and the public. These comments were then considered as evidence under oath.

The board deadlocked 2-2 on party lines. This deadlock was interpreted by the board of state canvassers, in deference to the Director of the Bureau of Elections, as a ruling that the signature submission was insufficient. This conclusion means that in effect, the Bureau of Elections made the determination. It is unclear how less than a majority "supports the recommendation of staff" rather than interpreting a deadlock with the presumption of validity and require the issue to be submitted to the voters of the primary. To be clear, a 2-2 deadlock means merely that the board could not agree either that the signatures were invalid or that

the candidates should be prevented from being on the primary ballot. Delegation of authority to the partisan Bureau of Elections is unconstitutional to interpret a deadlock.

During the hearing, the timeline was raised both in the conduct of the hearing and in the ability to resolve the issue of who should be on the primary ballot. The board of state canvassers began working in silence on the issue in March. Assuming a start date of April they had more than six weeks to prepare for the hearing. No subpoenas were sent. There was an abundance of time to issue a public advisory or other direct notice to known candidates which could have alerted candidates to the specific problem and could have been made more than 3 weeks before the deadline of April 19, 2022. At a much earlier time the campaigns of candidate Perry and candidate James were advised of issues, but no information was presented to Donna Brandenburg.

The Bureau of Election staff then issued the *Review* and *Staff Report* on May 23, 2022. This was then set for a hearing on Thursday, May 26, 2022, with extremely limited time for the presentation of argument and no time for the presentation of contrary evidence had there even been sufficient time to prepare for the hearing. The State Board of Canvassers who took more than six weeks to frame the issue left limited time and notice of about two working days to prepare for a

hearing. This is not even an adequate amount of time to hire counsel and review the facts.

The board of state canvassers and the staff and Director of the Bureau of Elections know that the process of printing the PRIMARY BALLOTS occurs immediately after the certification of candidates. Now that 60 days has passed the board is giving candidates very little time in which to respond and no time to conduct an investigation to refute the claims. The delay and lack of notice to prepare has prejudiced Donna Brandenburg. An injunction on the printing of ballots must be entered. This primary election process needs to be halted until after resolution of these claims. Therefore, an expediated emergency hearing is required.

Subsequent to the deadlock by the Board of Canvassers, the Plaintiff filed a complaint in the Michigan Supreme Court pursuant to MCL 168.522(12) for mandamus, injunctive and declaratory relief. In response the Michigan Attorney General filed an Affidavit of Jonathan Brater which established they had located the missing signatures and rejected them summarily. There are three (3) items that should be considered in response to the Affidavit of Johnathon Brater which was filed on June 3, 2022:

1) The Bureau of Elections admits that it "lost" the second submission of petition sheets and then rediscovered them on June 3, 2022. (Page 65-36 Paragraphs 100-104)

2) The Director of the Bureau of elections admits that they only examined 1014 total signatures of those submitted by Donna Brandenburg (Page 17) in the first submission and 171 signatures in the second submission (Page 38 Paragraph 110). This is a total of 1185 out of the counted number of facial valid signatures 23,976 (using their count). Even if there was the statutory authority to remove these unchallenged signatures there remain 22,791 presumptively valid signatures that clearly exceed the 15,000 minimum requirement.

This is a total of 23,976 signatures that were ***UNCHALLENGED*** and 22,791 which were **NEVER COMPARED TO THE QVF**. This is checking a sample of less than 5% of the total and about 10% of the signatures submitted by the 19 suspected circulators. There was no evidence as to how the sample was selected.

Again, there is no identification of the signatures or pages that were supposedly checked so there is no way for the candidate, the board of state canvassers, or this Court to review the Board of Election staff conclusions—even if there was time remaining to do so as would be required by due process and fundamental fairness.

3) The Bureau of Elections staff found the petitions and were able to count, review and report them in a few hours and ***ON THE SAME DAY.*** (Page 37-38 Paragraphs 106-110). This is significant because after they began in March, all the

way through April 19, 2022, the filing deadline, all the way through the April 26, 2022 challenge deadline, to the May 23, 2022 staff report the Bureau was unable to count evaluate and report any concern to the candidate on notice so that she would have time to investigate or rebut the unchallenged *sua sponte* claims of fraud.

Leave to file a supplemental response was sought and granted by the Michigan Supreme Court in which Plaintiff alleged an additional constitutional concern on separation of powers related to the addition of criteria in excess of the requirements of the Constitution. The Court entered an order which stated that it had considered the complaint for mandamus and was not persuaded that relief should be granted. The order was entered late on June 6, 2022. (Order Attached as Exhibit A). There is a more thorough discussion of issues in a similar order of the Michigan Supreme Court denying Perry Johnson's appeal from the Court of Appeals denying his relief. (Order Attached as Exhibit B).

## ARGUMENT

### PLAINTIFF IS ENTITLED TO INJUNCTIVE AND DECLARATORY BECAUSE THE BOARD OF CANVASSERS FAILED TO COUNT ALL SIGNATURES SUBMITTED IN SUPPORT OF HER NOMINATION TO THE PRIMARY BALLOT.

Donna Brandenburg raised the issue to the board of state canvassers that the Bureau of Election staff report failed to address the estimated additional 10,000 signatures and inquired as to whether the second submission was even examined.

The board of canvassers never addressed or resolved this discrepancy--which is their first duty to accurately count the signatures. The affidavit by the Director of the Bureau of Election, after the fact, does not satisfy this obligation—but does highlight the illegal process which involves an improper delegation from a bipartisan board to a partisan member of the executive branch.

The failure to properly count the signatures is a clear breach of a statutory duty found in MCL 168.552(8). This remains uncured.

Upon the receipt of the nominating petitions, the board of state canvassers shall canvass the petitions to ascertain if the petitions have been signed by the ***requisite number*** of qualified and registered electors.

The failure to examine the signatures means that they are presumed valid. There is no presumption of invalidity. The burden cannot be flipped to the candidate.

As to the issue of *qualified elector*, the report contains only one signature on page 233 and line 4 was unqualified as reported dead. Donna Brandenburg has no knowledge as to whether this is true or false as she lacks access to the QVF and had a statutory right to rely upon the attestation of the signer and affidavit of the circulator.

As to the issue of *registered elector*, the report contains only one signature on page 302, line 4 which reportedly moved from the address the signer reported.

Donna Brandenburg has no knowledge as to whether this is true or false as she lacks access to the QVF and had a statutory right to rely upon the attestation of the signer and affidavit of the circulator.

To resolve this issue the Court should consider that the record of the canvass is incomplete. Therefore, the presumption of validity controls.

*The invalidity of 1 or more signatures on a petition does not affect the validity of the remainder of the signatures on the petition.* MCL 168.544c(2).

Failure of the Board of State Canvassers to consider the additional signatures-notwithstanding the Bureau finding the sheets after the fact and rejecting summarily most of the signatures—is a violation of due process and a violation of the separation of powers in that the authority of the executive branch is limited by the constitutional legislative action.

The court should enter an order declaring the failure to act by the board of state canvassers to count or consider all signatures and the *ultra vires* acts of the Bureau of Election to summarily reject these second signatures to be unconstitutional for a violation of both substantive and procedural due process and a violation of the separation of powers clause.

**PLAINTIFF IS ENTITLED TO DECLARATROY AND INJUNCTIVE RELIEF BECAUSE THE BOARD OF CANVASSERS DID NOT HAVE AUTHORITY TO CHALLENGE THE GENUINENESS OF SIGNATURES WITHOUT A SWORN AND WRITTEN COMPLAINT**

Without a complaint there is no authority or requirement for the board of state canvassers to act to remove any signatures. There is no statutory authority to commence by investigation. There is no authority to remove the signatures because a discretionary review was abandoned for failure to follow the process mandated by the statute. There are sufficient signatures submitted by Donna Brandenburg regardless of whether the additional 10,000 signatures are counted. With sufficient signatures presumed to be valid, the Plaintiff Donna Brandenburg is entitled to declaratory or injunctive relief.

As to the required showing for relief: First, the submission of more than 15,000 valid signatures entitles Donna Brandenburg to be certified and placed on the August 2, 2022, primary ballot. This is a clear legal right. Second, the defendant has a clear legal duty to certify and place Donna Brandenburg if there are 15,000 valid signatures.

The board of state canvassers recognized 17,778 of the estimated 27,500 signatures submitted which is more than the 15,000 minimum requirement. If the signatures are presumed to be valid, then Donna Brandenburg is entitled to relief.

There is a presumption of validity of the signatures. The presumption remains until that presumption is overcome.

In *Deleeuw v State Bd of Canvassers*, 263 Mich App 497, 502; 688 NW2d 847 (2004), the Court of Appeals granted mandamus. The Court stated,

> The Board of State Canvassers' sole duty with regard to qualifying petitions is to determine whether the signatures on the petition are valid, including that of the person who circulates the petition, whether they are the signatures of registered voters, and whether they are sufficient valid signatures to certify the petition. MCL 168.590f; MCL 168.552(8); *Gillis v Bd of State Canvassers*, 453 Mich 881, 554 NW2d 9 (1996). Because the challenge to the petition failed to establish that were *not at least 30,000 valid signatures* filed in support, the board breached its clear legal duty to certify the petition. [emphasis added}

The presumption in the *Deleeaw* was applied when the board of state canvassers failed to establish that there were NOT sufficient signatures. The candidate Ralph Nader was from a minor party and hard a 30,000 requirement while Donna Brandenburg as a Republican is merely required to have 15,000. However, the presumption is clear that the burden is on the board.

The *Deleeuw* Court also found:

> The Board of State Canvassers comes within the definition of an 'agency' in the Administrative Procedures Act. M.C.L. § 24.203(2). 'An agency has no inherent power. Any authority it may have is vested by the Legislature, in statutes, or by the [C]onstitution.' *Belanger & Sons, Inc v Dep't of State*, 176 Mich App 59, 62-63, 438 NW2d 885 (1989); *Pharris v Secretary of State*, 117 Mich App 202, 204, 323 NW2d 652 (1982). The Board of State Canvassers' authority and duties with regard to qualifying petitions are set forth at MCL 168.552(8), which provides that the *board's sole duty with regard to qualifying petitions is to determine whether the signatures on the petitions are valid*, including those of the people who circulate the petitions, whether they are the signatures of registered voters, and whether there are sufficient valid signatures to certify the petitions. See *Gillis v Bd of State Canvassers*, 453 Mich 881, 554 NW2d 9 (1996). *There is nothing in the statute that would permit the board to look behind the signatures to determine the motives of the individual signatories or the motives or desires of the candidate*. The Secretary of State found that there were sufficient valid signatures to warrant certification of the petition to place Nader on the November ballot as an independent candidate.

> Under MCL 168.552(8), challenges to the sufficiency of the petition are limited to 'questioning the registration or the genuineness of the signature of the circulator or of a person signing a ... petition filed with the secretary of state....' **The board had no authority to consider any issues other than those identified in MCL 168.552(8).** The challenge to the petition failed to establish that there were not at least thirty thousand valid signatures filed in support of Nader's candidacy, and, in fact, the board never disputed the genuineness of the signatures or the registration status of the people who signed the petitions. Rather, the challenge alleged various violations of election law, a subject that is not within the scope of the board's review. See M.C.L. § 168.31 (requiring the Secretary of State to report election fraud to the Attorney General or prosecutor) and M.C.L. § 168.943 (conferring on circuit court's jurisdiction over offenses committed under the act). Consequently, because the challenge to the petition failed to establish that there were not at least thirty thousand valid signatures filed in support, the board breached its clear legal duty to certify the petition. **See MCL 168.552(8), which allows the board to investigate only if the board 'receives a sworn complaint, in writing, questioning the *registration of* or the *genuineness of* the signature of the circulator or of a person signing a [qualifying] petition**....' (Emphasis added.)

The *Deleeuw* Court stated in footnote 4. "**The board's inaction, through its deadlock, in our view constitutes an action, which is the equivalent of a determination.**"

Applying this clear precedent to the case at bar there is no ability to investigate without a sworn complaint in writing under MCL 168.552(8). Any action taken is ultra vires and beyond the ministerial duties of the board. The duties of the board of canvassers have been limited to ministerial for more than 130 years as established in *McQuade v Ferguson*, 91 Mich 438 (1892).

The candidate is entitled to declaratory and injunctive relief that the board of state canvassers exceeded their statutory authority and violated the substantive and

procedural due process rights of Donna Brandenburg by a clear unauthorized act of malfeasance. The separation of powers doctrine also limits the ability of the executive branch to act outside of constitutionally legislative authority. The executive branch cannot just create new law or disregard the law as written. These changes exceeded statutory authority. Even if the process was considered procedural, the ability to fashion a novel process without complying with the Administrative Procedures Act of Michigan which requires notice and public comment would have been violated with the creation *ex post facto* of a process after submission of petitions had been made by Donna Brandenburg.

**PLAINTIFF WAS DENIED PROCEDURAL AND SUBSTANTIVE DUE PROCESS IN VIOLATION OF FEDERAL AND MICHIGAN LAW AND IS ENTITLED TO DECLARATROY AND INJUNCTIVE RELIEF**.

The fact that not all of the submitted signatures have been considered individually is unconscionable and is a violation of substantive due process. The Bureau of Election claimed that the circulators provided candidates with fraudulent signature sheets. This is a big and bold statement. This smeared a political rival who has been critical of the Michigan Secretary of State in its conduct of the 2020 election process.

The determination of fraud is beyond the statutory authority of MCL 168.552 which states that the board is able to identify signatures as ***doubtful***

signatures. There is a statutory process to determine ***genuineness*** which permits an investigation and hearing on genuineness. MCL 168.552 (8-13).

There is no statutory authority to declare fraud as established in Deleeuw, supra.

The Bureau of Election as an agent of the Board of State Canvassers providing staff recommendations and made an unlawful conclusion as to fraud. Their inquiry is one of genuineness and is limited by MCL 168.552. A "plain" reading of the statute states that the board of state canvassers only has the authority to verify. Any signature that the state board of canvassers is unable to verify is to remain doubtful and to be referred to the local jurisdiction to investigate or recheck. MCL 168.552 (8-13). However, the investigation is ONLY triggered by a sworn written complaint filed pursuant to MCL 168.552(8). This was confirmed in *Deleeuw, supra.*

Even assuming there was authority to investigate (there is not as to Donna Brandenburg as there was no sworn written complaint) the process used was also in violation of the procedural requirements of the statute in that the board did not consider the signatures individually and struck them en mass. MCL 168.544c(11). As was raised by many of the candidates for governor, the signatures are to be considered by themselves and any invalid signature does not affect the other submitted signatures. MCL 168.544c(11).

The Bureau of Elections created a new process. This process was made on the fly. At the hearing on May 26, 2022, a member of the public commented before the hearing that the procedural rules were outdated.

The Bureau of Elections and the Board of Canvassers are Executive Branch Administrative agencies. The procedures are governed by the Administrative Procedures Act 306 of 1969 found at MCL 24.201 et seq. There is a process for promulgating rules which includes notice and public comment. Administrative decisions are not to be created based on new procedures created in response to the controversy. In fact, there is even a process for promulgating emergency rules, but these cannot be applied *ex post facto*.

In the present case, the *State Report on Fraudulent Nominating Petitions Section III and IV* must be deemed unconstitutional and an overreach by the Bureau of Elections. In section III, the Bureau of Elections outlined their new procedure. In Section IV the Bureau of Elections staff created a new remedy. This is a procedural due process violation on its face in that they did not follow the process of creating in section III administrative rules that are aligned with the statute and in section IV a new remedy which is both not permitted by the law and the providence of the legislature in a double whammy as a violation also of the Separation of Powers Doctrine.

The Procedural Due Process violations as to the new and novel process in Section III are:

- The new process used *limited selection and representation* when the statute expressly requires each signature to be evaluated. This was presented without identifying which of the candidates' signatures were examined and left to wonder with a report of 7000 signatures of 68,000 suspected signatures were checked by the QVF

- The process failed to create a record that a candidate or member of the public could check the work and a hearing on the 'evidence' could review the actual evidence before the conclusion was presented as an established fact.

- The process did not go thru the Administrative Procedures Act. There was no public comment

- The process varies from the statute which requires individual signature verification

- The process transferred the burden of proof from the challenger (in this case the Bureau of Elections) to the Candidate.

- The deadlocked vote was misinterpreted as to the effect by presumptively supporting the Bureau Recommendation instead of determining if there was sufficient cause to disqualify the signatures under the law.

- The process failed to reconcile the estimated submission of 27,500 signatures to the reported 17,788

- The process failed to comply with Michigan law

- There is no statutory grant of authority *sua sponte* for the Bureau to initiate a review of the genuineness of signatures.

- There was no comparison to the QVF as required when there is a proper complaint in writing and authority to investigate.

In addition, the statutory and administrative regulatory scheme both in concept and as applied is unconstitutional and resulted in a denial of procedural and substantive due process.

- The candidate was not provided adequate notice of the challenge. When a challenge is filed it is due by April 26, 2022, which is seven days after the filing deadline. No written sworn challenge complaint was ever filed hence no notice and opportunity for four weeks to respond while the Bureau of Elections *sua sponte* prepared a report issued and received late in the day on May 23, 2022

- The Bureau of Elections claimed it suspected or had reasonable suspicion of fraud but issued no subpoenas and presented no sworn testimony of facts. Only conclusions and arguments were heard on the Donna Brandenburg nominating petitions that were generalized from other candidate submissions.

- The candidate was not given adequate opportunity
    - to investigate
    - to check the investigation of the Bureau of Elections
    - to review and comment on the procedures of the Bureau of Elections
    - to present evidence at the hearing.

- The process in MCL 168.544 which provides for the ministrial function of verifying signatures for genuineness is controlling. The process in MCL 168.544

*The Sanction for "Obviously Fraudulent Signatures": What does it really mean?*

There is a provision in MCL 168.544c (11) to remove *obviously fraudulent signatures* without comparing those signatures *against local registration records* which is described as a "sanction".

MCL 168.544 (11) **If after a canvass and a hearing on a petition** under section 476 or **552** the board of state canvassers **determines** that an individual has

knowingly and intentionally failed to comply with **subsection (8) or (10**), the board of state canvassers may impose 1 or more of the following **sanctions**:

> (a) Disqualify **obviously fraudulent signatures** on a petition form on which the violation of subsection (8) or (10) occurred, **without checking the signatures** against **local registration records.**

*[The relaxation sanction of the direct comparison can also be reached under MCL 168.54c(13) upon the violation of MCL 168.544c(12) which requires the same elements of finding under sections (8) and (10) plus additional evidence to support the knowledge requirement of section (12) and is therefore not discussed as it is even further out of reach to the board of canvassers]*

The *relaxation sanction* does not relieve the duty to compare to the QVF—just *local registration* records. Please review the requirements of MCL 168.552(13).

> (13) The qualified voter file may be used to determine the validity of petition signatures by verifying the registration of signers. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote, there is a rebuttable presumption that the signature is invalid. If the qualified voter file indicates that, on the date the elector signed the petition, the elector was not registered to vote in the city or township designated on the petition, there is a rebuttable presumption that the signature is invalid. The qualified voter file shall be used to determine the genuineness of a signature on a petition. ***Signature comparisons shall be made with the digitized signatures in the qualified voter file.*** The county clerk or the board of state canvassers shall conduct the signature comparison using digitized signatures contained in the qualified voter file for their respective investigations. **If the qualified voter file does not contain a digitized signature of an elector, the city or the township clerk shall compare the petition signature to the signature contained on the master card**. [Emphasis added]

There is a mandatory requirement to compare to the QVF but there is only a contingent requirement to compare to local records. The sanction does NOT relieve the duty to compare to the QVF.

BEFORE applying the sanction and being relieved of the "direct comparison" requirement there are conditions precedent. These conditions precedent are listed in the subsection (11) which references that a finding must have occurred after a hearing pursuant to MCL 168.552 and that there is that determination of a violation of MCL 168.544c(8) or (10).

Examining the condition precedent to the relief of direct comparison and determining when a hearing pursuant to MCL 168.552 is authorized and we are back to a requirement that the hearing requires a sworn written complaint pursuant to MCL 168.552(8). There was no complaint and therefore no statutory authority for a hearing regarding the Brandenburg nominating petitions signatures.

Examining the condition precedent further, AT THE HEARING there must be a determination. There was a deadlock and so the board of state canvassers did not make any "determination" and as argued previously abdicated their authority to the director of the Bureau of Elections. There does not have to be a majority vote to overturn his personal conclusion which was the effect of the deadlock and the Board of state canvassers' interpretation of the effect of the deadlock.

Examining the condition precedent further there must be a determination that a violation of penal statutes listed as MCL 168.544c(8) or (10). The hearing IS NOT about finding obviously fraudulent signatures. The elements of these crimes require a person to sign another person's name or certify fraud as a circulator. These penal statutes (8) and (10) require sufficient evidence to overcome a presumption of innocence and proof beyond a reasonable doubt and a unanimous decision of a jury in a criminal trial. The hearing does not set forth a standard of evidence as reasonable suspicion, probable cause, the preponderance of the evidence, clear and convincing evidence or beyond a reasonable doubt and is therefore void for vagueness and leaves to much discretion to the board. I am certain that it any quantum of evidence is not met with a deadlocked board.

Finally, when these conditions precedent have been met, the initial determination of fraud after a hearing after a written sworn complaint then permits an EXTENSION of the removal of signatures to signatures that are obviously fraudulent without the need for direct comparison. The hearing on the investigation also requires a direct comparison of signatures under MCL 168.552(13) for the *initial* determination and only relieves the requirement as an extension to other signatures that are obviously fraudulent.

The term "obviously fraudulent" is subjective. There is no constitutional sufficient standard that can be applied equally, and it leaves too much to the

discretion of the person applying the standard. In a ministerial activity undertaken by the administrative board of state canvassers, the lack of clarity means this statute is unconstitutionally void for vagueness. The application of the standard is like "beauty in the eye of the beholder and will result in a denial of equal protection. The term invites controversy and can be applied arbitrarily and capriciously.

The standard of "Obviously Fraudulent" is promoted to justify a departure from the comparison of each signature in the consideration of the signatures submitted by Donna Brandenburg. They did not just remove local comparison but the mandatory QVF comparison.

In reviewing the disposition of claims asserted in the Court of Appeals related to other candidates, there was a deference given to "discretion" exercised by the board of state canvassers as to being relieved of the requirement to examine every signature. Donna Brandenburg states that in exercising discretion the board of canvassers exceeded the ministerial authority granted by statute and affirmed by case law. Discretion was delegated in effect to the Bureau of Election staff to exercise (in violation of statutory conditions) that was applied broader than authorized by the statute as to her signatures. The declaration of signatures which are obviously fraudulent to be discounted should be allowed—but there needs to be a standard that is not arbitrarily applied. In examination of the few examples cited

to Donna Brandenburg there was no signature that was declared to be obviously fraudulent under any standard. Instead, all signatures by certain individuals were disqualified. This unconstitutional process violates substantive and procedural due process when the conditions precedent were not satisfied. Further, it is a denial of equal protection in that it is arbitrary and capricious, it is overbroad as applied, and the term 'obviously fraudulent' is void for vagueness. There appears to be an improper delegation of authority and a separation of powers violation when the Bureau of Elections is granted deference to determine any issue with a deadlocked board—especially this action.

*Fundamental Fairness*

Donna Brandenburg stated that she had no knowledge of any fraudulently gathered signatures. The *State Report on Fraudulent Nominating Petitions* (Attached as Exhibit 1 to the Complaint) on page 5 states that "At this point, the Bureau does not have reason to believe that any specific candidate or campaigns were aware of the activities of the fraudulent petition circulators."

It was raised by counsel for Donna Brandenburg that the Bureau staff began canvassing the governor nominating petitions in late March per their own report on page 2 paragraph 2 of the *State Report on Fraudulent Nominating Petitions* (Attached as Exhibit 1 to the Complaint) in *Section 2 Timeline of Detection and Response* which states "Bureau staff began to review nominating petitions at the

end of March after several gubernatorial candidates had submitted nominating petitions. During this review, Staff noticed a large number of petition sheets, submitted by certain circulators, appeared fraudulent and consisted entirely of invalid signatures."

The objection to the process was that the Bureau failed with inexcusable neglect to inform candidates prior to April 19, 2022, deadline so they would have a fair opportunity to remedy with additional signatures. In fact, this issue was dormant for almost 60 days as the Bureau continued to work until the staff report was released on May 23, 2022. A mere two days were given to respond. The initial notice to Donna Brandenburg was in the form of press questions on May 23, 2022, and in checking her email she received notice of the 17-page report *State Report on Fraudulent Nominating Petitions.*

There was limited time to secure counsel, review the reports and present at the May 26, 2022, hearing. This opportunity was after any meaningful chance to investigate and even after the opportunity to subpoena witnesses had passed which is generally three (3) days. Further, her time to present and be heard on the issues at the hearing was severely limited by the board who claimed they had insufficient time to hear comments from all affected candidates.

The summary nature of the hearing was described properly as a goat rodeo.

*The Importance of Impartiality for Due Process*

The Director of the Bureau of Elections is appointed by a Democrat Secretary of State. In this case, there are many claims of partisan activity but review the facts of this case. All of the nominating petitions that are challenged are from the Republican party. There was no allegation or investigation of any Democratic candidate being affected by the challenged circulators.

The Board of Canvassers which is made up of two Republicans and Two Democrats (One Republican was even appointed by the Democratic Governor) was deadlocked on party grounds.

No *impartial judiciary* considered actual evidence, enforced any *rules of evidence*, or determined that evidence met a *standard of proof* to determine if the circulators committed fraud or the signatures are invalid.

Without these safeguards, the process is arbitrary and capricious.

**DONNA BRANDENBURG IS ENTITLED TO DECLARATORY AND INJUNCTIVE RELIEF AS TO WHETHER THERE WAS SUFFICIENT EVIDENCE PRESENTED TO THE BOARD TO DETERMINE SIGNATURES WERE FRADULENT.**

The point is already made that this inquiry is beyond the authority granted to the board of state canvassers. However, was the premise supported by competent and material evidence? Or is it mere suspicion which has materially prejudiced a candidate?

The conclusion by the Bureau of Election that there was fraud is not conceded by Donna Brandenburg and requires both investigation and the

presentation of evidence. There is a presumption of validity as the signatures on their face are attested to and the circulator signed an affidavit that the signatures were gathered in the presence of the circulator.

This determination of fraud will likely happen sometime after the abbreviated timeline and the primary election in the course of criminal proceedings. Fraud requires proof in the form of evidence. The Bureau may have raised reasonable suspicion of fraud but did not even investigate or present evidence at a hearing to determine whether there was fraud. The statute requires a finding of "obvious fraudulent signatures" after a determination that a crime was committed pursuant to MCL 168.544(c)

Fraud is a serious allegation. The taint of this conclusion is very damaging both to a reputation of an individual and especially to a campaign. This determination is not even within the authority of the state board of canvassers. The role of signature verification which will be examined in detail is limited to ministerial duties to determine facial validity, qualification, and registration.

There is a limited ability to resolve challenges when raised by a challenger as to the genuineness of a signature on a signature-by-signature basis. The board can only verify a signature or refer the signature to the jurisdictional election clerk per the statute. Nowhere does the failure to determine a signature as genuine or verified create the ability to make a declaration of fraud. The maximum finding

permissible was that the board considered the signatures doubtful and referred them individually—which was not done.

Instead, a declaration of fraud and declaration that candidacy was invalid was made to the public. This declaration was presented as a conclusion of fact. While it might be true it has not been established by evidence. Allegations are often exaggerated, misconstrued or even incorrect and that is what the due process and presentation of facts to an impartial factfinder require.

Candidate Donna Brandenburg is entitled to Declaratory and Injunctive Relief determining that there has been no competent evidence of fraudulent signatures, that the statutory process was not followed to check the validity of signatures and that the investigation of genuineness was not even permitted under the law.

**THE DEADLOCK OF THE BOARD IS A DETERMINATION THAT THE SIGNATURES ARE PRESUMED VALID DUE TO ITS INACTION AND THEREFORE, ANY OTHER RESULT OTHER THAN PUTTING DONNA BRANDENBURG ON THE PRIMARY BALLOT IS A VIOALTION OF DUE PROCESS**

The *Deleeuw* Court, *supra* stated in footnote 4. “The board's inaction, through its deadlock, in our view constitutes an action, which is the equivalent of a determination.”

The board deadlocked 2-2. Donna Brandenburg states the effect of this inaction is a final determination. What was determined? It has been interpreted by

the board of state canvassers in conjunction with the advice of the Director of the Bureau of Elections that the effect is that the staff recommendations are accepted. This has the effect of delegating the duty to make all decision to the Bureau of Elections when the board deadlocks. This is absurd.

It is a denial of Equal Protection to have a law that fails to set uniform standards for application as determining the signature validity without a unfirom standard would be arbitrary and capricious. Michigan has not passed a law by the legislature nor promulgated rules for signature comparison in elections. There are proposed rules under the Administrative Procedures Act for signature verification on ballots. While the standards do not apply on their face to Nominating Petitions these standards emphasize the presumption of validity. The Proposed Rules are attached as Exhibit C.

The board was unable to declare the signatures submitted by Donna Brandenburg were insufficient and therefore a deadlock means the presumption of validity prevails. There is no other interpretation when 17,778 signatures were counted and none of them were challenged facially as invalid or challenged by a sworn written complaint.

**THE PLAINTIFF IS ENTILED TO DECLARATORY AND INJUNCTIVE RELIEF WHEN THE EXECUTIVE AND LEGISLATIVE BRANCHES ADD REQUIREMENTS THAT ARE IN EXCESS OF THE MICHIGAN CONSTITUTION FOR THE OFFICE OF GOVERNOR.**

The Michigan Constitution sets forth the requirements of a governor. In US Term Limits, Inc v Thorton, 514 US 779 (1995), the US Supreme Court warned about the legislature and executive branches would set 'qualifications' on offices that would subvert the rights of the electorate to be represented by persons of their choosing and destroy the republic. The US Supreme Court held that any additional qualifications imposed by any modification for federal office required an amendment of the US Constitution. The court held that the act was unconstitutional as it handicapped a class of candidates by imposing additional restrictions through the use of qualifications. The qualifications for governor are listed in the Michigan Constitution of 1963 in Article 5 Section 22 and there is no requirement that a governor is approved by the board of state canvassers before being able to run for office. The addition of bureaucratic (Action by a Bureau) qualification created and administered by a partisan appointee of an office that is held by a rival party to deselect half of the contenders for the chief executive office is depriving the voters of Michigan of the ability to choose their candidates and is unconstitutional.

## CONCLUSION

The Defendants failed the citizens of Michigan, the electors who signed the nominating petitions and the Republican Candidate Donna Brandenburg in the process described by Donna as a goat rodeo. An impromptu process was changed resulting in unnecessary damage to a campaign. Actions were taken that exceeded

statutory authority, conclusions were made and publicized that were harmful to candidates that are both unsupported by the evidence and a product of assumption and conclusions.

Donna Brandenburg is entitled by law to have declaratory and injunctive relief granted and to be certified and added to the August 2, 2022, ballot. The issue is time sensitive and so expediated relief has been requested. The relief requested is that the submission of signatures which were unchallenged be deemed sufficient by operation of the presumption of validity.

Donna also requests that in the alternative, the Court would order the Board of State Canvassers to consider all of the signatures she submitted as presumed valid..

Further, Donna Brandenburg requests the Court enter declaratory relief to prevent other candidates from being affected that the Bureau of Elections declaring that the Board of Elections as staff for the board of state canvassers is NOT permitted to investigate signatures that are unchallenged pursuant to MCL 168.552. The Director of Elections could have filed its own timely challenge but chose not to do so.

Further, Donna Brandenburg requests the Court enter declaratory relief determining that the *ultra vires* actions were in violation of Chapter XXIV of the Michigan Election code and deprived her of her constitutional rights.

Finally, Donna Brandenburg asks the court to issue injunctive relief preventing the printing of primary ballots until the court schedules and resolves the issues present.

**Certification pursuant to LCivR 7.2(b)(1-2)**

This brief is written in support of a dispositive motion in that it accompanies a brief in support of the motion and complaint for injunctive and declaratory relief and as such is less than 10,800 words per Online MS Word which calculates the document total of 7745 and is 33 pages as it is in Times New Roman 14 Pt Font.

Respectfully submitted

Dated: June 21, 2022

Law Office of Daniel J. Hartman

By: /s/Daniel J. Hartman
Daniel J. Hartman (P52632)