# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 3, 2022

Bridget M. McCormack,
Chief Justice

Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch,
Justices

164461 & (34)(36)

PERRY JOHNSON,
Plaintiff-Appellant,

v

SC: 164461
COA: 361564

BOARD OF STATE CANVASSERS,
SECRETARY OF STATE, and BUREAU
OF ELECTIONS DIRECTOR,
Defendants-Appellees.

_________________________________________/

On order of the Court, the motions for immediate consideration and for Carol Bray to file a brief amicus curiae are GRANTED. The application for leave to appeal the June 1, 2022 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

MCCORMACK, C.J. (*concurring*).

I concur with denying leave to appeal because there is nothing here meriting our further time or attention. The plaintiff's mandamus action plainly lacks merit because he cannot show that the Board of State Canvassers had a clear legal duty to certify his name to the ballot.

A finding that the signatures supporting the plaintiff's petitions were sufficient is a matter of the Board's judgment that requires some expertise. Therefore, it is not a ministerial task subject to mandamus. A writ of mandamus shall issue only where (1) the plaintiff has a clear legal right to the performance of a specific duty; (2) the defendant has a clear legal duty to perform the requested act; (3) *that act is ministerial*; and (4) the plaintiff has no other legal or equitable remedy. *Taxpayers for Mich Constitutional Gov't v Michigan*, 508 Mich 48, 82 (2021). Although mandamus "will lie to require a body or an officer charged with a duty to take action in the matter, *notwithstanding the fact that the execution of that duty may involve some measure of discretion* . . . , mandamus will lie to compel the exercise of discretion, *but not to compel its exercise in a particular manner*." *Teasel v Dep't of Mental Health*, 419 Mich 390, 410 (1984) (emphasis added).

The plaintiff quarrels with the Board's methodology—he does not claim the Board's decision was ministerial. Oral argument won't change this deficiency in his application.

ZAHRA, J., joins the statement of MCCORMACK, C.J.

ZAHRA, J. (*concurring*).

I concur in the Court's decision to deny the application. I write separately to request that the Legislature amend the Michigan Election Law, MCL 168.1 *et seq*., to require petitions to be filed with the Bureau of Elections and determinations made by the Board of State Canvassers at least six weeks earlier in the election cycle than currently required by law, thereby providing the judicial branch a better opportunity to provide meaningful judicial review to those allegedly aggrieved by decisions of the Bureau of Elections and the Board of State Canvassers. Election-law cases have very concrete deadlines that are necessary to facilitate the printing and distribution of ballots. The current process provides very little time between decisions of the Board of State Canvassers and the date ballots must be finalized for printing. In the present case, there were only eight days between the vote of the Board of State Canvassers and the date a disposition was needed from this Court. These cases can present substantial and complex questions of law, which generally require extensive briefing and cannot properly be resolved in a matter of days. As discussed at length in Justice VIVIANO's concurring statement, there is a question whether "the Court of Appeals erred to the extent it held that the Board has discretion to dispense with the statutory requirement to verify petition signatures by comparing them to the digitized signatures in the qualified voter file." Fortunately, in the present case, the action filed by Johnson is plainly deficient and is properly denied in short order. Johnson has filed a mandamus action asking the Court to order his name placed on the ballot. To obtain an order of mandamus, a plaintiff must show that the defendant had a clear legal duty to act in accordance with plaintiff's demands. See *Taxpayers for Mich Constitutional Gov't v Michigan*, 508 Mich 48, 82 (2021). Here, even if Johnson is correct that the Bureau of Elections erred by failing to check every signature against the qualified voter file, Johnson would only be entitled to that relief, not the placement of his name on the ballot. Chief Justice MCCORMACK is correct to conclude that "[o]ral argument won't change this deficiency in his application." The next case involving access to the ballot under the Michigan Election Law may not be so easily resolved. The people of Michigan deserve thoughtful, cogent, and well-reasoned decisions from this Court. The Legislature should amend the Michigan Election Law to ensure that the judicial system has ample time to meaningfully review such matters, which are vitally important to the people of Michigan.

VIVIANO, J., joins the statement of ZAHRA, J.

VIVIANO, J. (*concurring*).

I agree with the Court's decision to deny leave in this case but write separately to highlight a point on which I believe the Court of Appeals may have erred in its published

opinion. The Court of Appeals correctly observed that the Board of State Canvassers (the Board) may disqualify obviously fraudulent signatures without checking them against local registration records. MCL 168.544c(11)(a). However, the Court of Appeals held that this provision also relieved the Board of a different duty: the duty under MCL 168.552(13) to check petition signatures against the digitized signatures in the qualified voter file before disqualifying them for lack of genuineness. I question whether this interpretation is correct.

MCL 168.552(8) establishes the Board's duties to canvass nominating petitions and the procedures the Board is to take when a candidate's petitions are challenged. It states, in relevant part:

> Upon the receipt of the nominating petitions, the board of state canvassers shall canvass the petitions to ascertain if the petitions have been signed by the requisite number of qualified and registered electors. Subject to subsection (13), for the purpose of determining the validity of the signatures, the board of state canvassers may cause a doubtful signature to be checked against the qualified voter file or the registration records by the clerk of a political subdivision in which the petitions were circulated. If the board of state canvassers receives a sworn complaint, in writing, questioning the registration of or the genuineness of the signature of the circulator or of a person signing a nominating petition filed with the secretary of state, the board of state canvassers shall commence an investigation. Subject to subsection (13), the board of state canvassers shall verify the registration or the genuineness of a signature as required by subsection (13). If the board is unable to verify the genuineness of a signature on a petition, the board shall cause the petition to be forwarded to the proper city clerk or township clerk to compare the signatures on the petition with the signatures on the registration record, or in some other manner determine whether the signatures on the petition are valid and genuine.

Thus, regardless of whether the Board reviews signatures for validity as part of its initial canvass or does so in response to a sworn complaint, it must do so in compliance with Subsection (13). That provision states, in relevant part:

> The qualified voter file may be used to determine the validity of petition signatures by verifying the registration of signers. . . . The qualified voter file shall be used to determine the genuineness of a signature on a petition. Signature comparisons shall be made with the digitized signatures in the qualified voter file. The county clerk or the board of state canvassers shall conduct the signature comparison using digitized signatures contained in the qualified voter file for their respective

> investigations. If the qualified voter file does not contain a digitized signature of an elector, the city or the township clerk shall compare the petition signature to the signature contained on the master card.

Accordingly, under MCL 168.552(13), the qualified voter file "may be used" to determine validity but "shall be used" to check the genuineness of signatures.[1] But if the qualified voter file does not contain the digitized signature for the elector in question, Subsections (8) and (13), when read together, require the Board to forward the petition to the appropriate city or township clerk for the clerk to compare the signature in question to the signature on the local registration record, which is the master registration card.[2]

MCL 168.544c(11)(a) creates a partial exception to this process. The Board can "[d]isqualify obviously fraudulent signatures . . . without checking the signatures against local registration records." The Court of Appeals interpreted this provision to mean that the Board was not required to compare each signature collected by what the Bureau of Elections found to be "fraudulent-petition circulators" against the digitized signatures in the qualified voter file to determine whether they are genuine. But the qualified voter file is a different resource than the "local registration records." The qualified voter file is the official *statewide* file used "for the conduct of all elections held in this state."[3] Thus, MCL 168.544c(11)(a) is not an exception to the requirement in MCL 168.552(13) that the qualified voter file must be used to determine the genuineness of a signature. Under this reading, if the Board is considering whether to disqualify a signature on the ground that it is obviously fraudulent because it is not genuine, the Board must still compare the signature to the digitized signature in the qualified voter file. However, if the qualified voter file does not contain the digitized signature for the elector in question, MCL 168.544c(11)(a) allows the Board to disqualify that signature without forwarding the petition to the local city or township clerk for comparison of the signature in question to the master card.[4]

---

[1] The use of "shall" indicates a mandatory act. See *People v Allen*, 507 Mich 597, 616 (2021). While the terms "validity" and "genuineness" may have some overlap, as used in the statute they appear to be distinct concepts. See *Merriam-Webster's Collegiate Dictionary* (7th ed) (defining "valid" as "having legal efficacy or force; *esp* : executed with the proper legal authority and formalities" and defining "genuine" as "actually produced by or proceeding from the alleged source or author").

[2] See MCL 168.501 (setting forth how the master registration cards (termed the "master file") must be filed and what they must contain); MCL 168.502 (specifying that the master file must remain "in the custody of the township or city clerk").

[3] MCL 168.509o(1); see also MCL 168.509m(2)(b).

[4] The statutory history of the relevant provisions in MCL 168.544c and MCL 168.552 supports this interpretation. The Legislature made a number of revisions to these statutes in 1999. 1999 PA 219; 1999 PA 220. Prior to the passage of these acts, the process

If this interpretation is correct, the Court of Appeals erred to the extent it held that the Board has discretion to dispense with the statutory requirement to verify petition signatures by comparing them to the digitized signatures in the qualified voter file. In short, it does not appear that the Board complied with the statutorily mandated process for disqualifying signatures for lack of genuineness.

Ultimately, however, it is unnecessary to decide the interpretive question for purposes of this appeal. Even if the Board lacked authority to disqualify the signatures without verification against the qualified voter file, this conclusion would not entitle plaintiff to the relief he requests, i.e., placement of his name on the ballot. To obtain mandamus, plaintiff must show, among other things, that defendants have a clear legal duty to take some action.[5] Here, plaintiff has not demonstrated that defendants are under

---

under MCL 168.552(8) for checking the validity or genuineness of a signature was for the Board to forward the petition to the appropriate city or township clerk for the clerk to make the determination; the statute did not call for the Board to make this determination itself. 1999 PA 220 added to MCL 168.552 Subsection (13), which provided that "[t]he qualified voter file may be used to determine the validity of petition signatures," but it did not contain the requirement that the qualified voter file be used to determine the genuineness of a signature that is found in the current version of MCL 168.552(13). 1999 PA 219 added to MCL 168.544c the provision that the Board can "[d]isqualify any obviously fraudulent signatures . . . without checking the signatures against local registration records." MCL 168.544c(9)(a), as added by 1999 PA 219. (This provision was later moved to subsection (11)(a).) Since the only process for checking the genuineness of a signature at the time was to forward the petition to the appropriate city or township clerk for that clerk to check the signature against the local registration records, the effect of this addition to MCL 168.544c was that the Board could disqualify an obviously fraudulent signature without any signature comparison taking place. In 2005 the Legislature amended MCL 168.522. 2005 PA 71. It changed MCL 168.552(8) so that after a complaint is filed, the Board has a duty to verify the registration or genuineness of a signature, and only if the Board is unable to verify the genuineness must it forward the petition to the appropriate city or township clerk. It also added to MCL 168.552(13) the requirement that the qualified voter file must always be used to determine a signature's genuineness. But the Legislature did not amend MCL 168.544c(11)(a). Thus, while the Board could still disqualify obviously fraudulent signatures without checking them against local registration records, checking a signature against the local record was no longer the default method for determining validity and genuineness; the local records would only be checked if a question as to the signature's validity or genuineness remained after the Board checked the qualified voter file.

[5] To obtain a writ of mandamus, a plaintiff must show that "(1) the plaintiff has a clear, legal right to performance of the specific duty sought, (2) the defendant has a clear legal duty to perform, (3) the act is ministerial, and (4) no other adequate legal or equitable

a clear legal duty to take the steps necessary to having his name placed on the ballot. Rather, the Board's clear legal duty would be to "canvass the petitions to ascertain if the petitions have been signed by the requisite number of qualified and registered electors," which in this case would at most include checking each of the challenged signatures against the qualified voter file.[6] But plaintiff has not provided any supporting evidence that would indicate that a proper review of all the signatures he submitted would lead to a determination that he has a sufficient number of valid signatures to satisfy the statutory requirements.[7] Indeed, plaintiff has not even made such an argument. Any remand to the Board would likely be futile, rendering mandamus inappropriate.[8] For these reasons, I agree that denial of leave to appeal is warranted.

ZAHRA, J., joins the statement of VIVIANO, J.

BERNSTEIN, J. (*dissenting*).

Because of my strong belief in the importance of elections to our democracy, I would order expedited oral argument in this case. I take no position on the merits of this case. However, plaintiff raises serious concerns about ballot access and whether the current process implemented by the state appropriately balances real concerns about fraud against the possibility of disenfranchising both candidates and voters.

---

remedy exists that might achieve the same result." *Taxpayers for Mich Constitutional Gov't v Michigan*, 508 Mich 48, 82 (2021) (citation and quotation marks omitted).

[6] MCL 168.552(8).

[7] Nor is it clear that a proper review of the signatures could be accomplished in the time remaining before the ballots must be printed, although plaintiff might have been entitled to placement on the ballot if he had raised at least a colorable claim that he had collected sufficient signatures but there was not enough time for the Board to conduct the statutorily mandated review. See, e.g., *Wingert v Urban*, 250 NW2d 731 (Iowa, 1977) (excusing compliance with mandatory petition signature requirements in exceptional circumstances).

[8] See 55 CJS, Mandamus, § 15, p 34 (explaining that a writ of mandamus is only appropriate when it "will be effectual as a remedy" and noting that "courts generally will not issue a writ of mandate to enforce an abstract right that [is] of no practical benefit to the petitioner"); cf. *New York Mtg Co v Secretary of State*, 150 Mich 197, 205 (1907) (holding that the "naked right" alone to a writ of mandamus is insufficient to warrant its issuance and that the Court may exercise its discretion not to issue a writ of mandamus on public policy grounds).

Although the Secretary of State must certify eligible candidates by June 3, see MCL 168.552(14), a swift decision by this Court could allow for a certification decision to be reversed in time for county clerks to receive corrected absentee ballots by June 18, see MCL 168.714(1). Because I believe this case presents significant legal issues worth further consideration, I would order full briefing in this case and hold oral argument next week to ensure that the interests of Michigan voters are fully considered.

SEAL OF THE MICHIGAN SUPREME COURT · LANSING · DISCITE JUSTITIAM MONITI

s0603

I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 3, 2022

Clerk