DEPARTMENT OF STATE

BUREAU OF ELECTIONS

# SIGNATURE MATCHING FOR ABSENT VOTER BALLOT APPLICATIONS AND ABSENT VOTER BALLOT ENVELOPES

Filed with the secretary of state on

These rules take effect immediately upon filing with the secretary of state unless adopted under section 33, 44, or 45a(9) of the administrative procedures act of 1969, 1969 PA 306, MCL 24.233, 24.244, or 24.245a. Rules adopted under these sections become effective 7 days after filing with the secretary of state.

(By authority conferred on the secretary of state by sections 31, 759, 761, 765, and 765a of the Michigan election law, 1954 PA 116, MCL 168.31, 168.759, 168.761, 168.765, and 168.765a)

R 168.21, R 168.22, R 168.23, R 168.24, R 168.25, and R 168.26 are added to the Michigan Administrative Code, as follows:

R 168.21 Definitions.

Rule 1. As used in these rules:

(a) "Election official" means the township, city, or county clerk or their staff responsible for verifying signatures.

(b) "Qualified voter file" means the voter registration database maintained by the Secretary of State.

(c) "Signature on file" means the signature of the voter contained in the qualified voter file or on the absent voter ballot application.

R 168.22 Sufficient agreement of voter signature; initial presumption of validity.

Rule 2. (1) In determining for purposes of section 761(2) of the Michigan election law, 1954 PA 116, MCL 168.761, whether a voter's absent voter ballot application signature or absent voter ballot envelope signature agrees sufficiently with the voter's signature on file, signatures must be reviewed beginning with the presumption that the voter's signature is his or her genuine, valid signature.

(2) A voter's signature should be considered invalid only if it differs in multiple, significant, and obvious respects from the signature on file. Slight dissimilarities should be resolved in favor of the voter. Exact matches are not required to determine that a signature agrees sufficiently with the signature on file.

R 168.23 Redeeming qualities.

Rule 3. (1) If there are any redeeming qualities in the absent voter ballot application signature or absent voter ballot envelope signature as compared to the signature on file, the signature must be treated as valid. The bureau of elections shall provide examples of signatures with redeeming qualities and questionable signatures.

(2) Redeeming qualities include, but are not limited to, the following:

(a) Similar distinctive flourishes.

(b) More matching features than nonmatching features.

(c) Signature features do not match because it appears as if the voter's hand is trembling or shaking.

(d) Only part of the signature matches the signature on file, for example, if only the first letters of the first and last name match.

(e) Signature is partially printed but partially matches the signature on file.

(f) Signature is a recognized diminutive of the voter's full legal name.

(g) Signature omits a middle name, replaces a middle name with an initial, or replaces a middle initial with a name.

(h) Signature style has changed slightly from signature on file.

R 168.24 Explanations for differences in signatures.

Rule 4. (1) Elections officials shall consider the following as possible explanations for the discrepancies in signatures:

(a) Evidence of trembling or shaking in a signature could be health-related or the result of aging.

(b) The voter may have used a diminutive of their full legal name, including, but not limited to, the use of initials, or the rearrangement of components of their full legal name, such as a reversal of first and last names, use of a middle name in place of a first name, or omitting a second last name.

(c) The voter's signature style may have changed slightly over time.

(d) The signature on the absent voter ballot envelope or provisional ballot envelope may have been written in haste.

(e) The surface of the location where the signature was made may have been rough, soft, uneven, or unstable.

(2) In addition to the characteristics listed in R 168.23(2)(f) and (g), the elections official may also consider factors applicable to a particular voter, such as the age of the voter, the age of the signature or signatures contained in the voter's record, the possibility that the voter is disabled, the voter's primary language, and the quality of any digitized signature or signatures contained in the voter's record, and any other plausible reason given by the voter that satisfies the clerk when following up on a questionable signature.

R 168.25 Timing of signature review and notification.

Rule 5. (1) If the absent voter ballot application or the absent voter ballot envelope is received at least 6 calendar days prior to the election, the clerk must notify the voter of issues with the voter's signature by the end of the next business day following receipt of the application or ballot envelope.

(2) If the absent voter ballot application or the absent voter ballot envelope is received less than 5 calendar days prior to the election, the clerk must review applications and envelopes immediately upon receipt and immediately contact a voter upon determination that the voter's signature on the application or the envelope is missing or does not match the signature on file.

(3) If the absent voter ballot application or the absent voter ballot envelope is missing the voter's signature, or if the clerk determines that the voter's signature on the absent voter ballot application or on the absent voter ballot envelope does not agree sufficiently with the voter's signature on file, the clerk shall inform the voter using any and all contact information available that their absent voter ballot application or their absent voter ballot envelope is missing a signature or has a non-matching signature, and the need to cure the signature deficiency. The clerk must notify the voter by phone and email, and, in the absence of the voter's email address, by United States mail.

R 168.26 Curing signature deficiencies.

Rule 6. A voter may cure a missing or mismatched signature by providing a signature on the absent voter ballot application or ballot envelope with the missing or mismatched signature or by providing a signature on another form or method as specified by the election official on their website or in the election official's office. A voter may cure a missing or mismatched signature up until the close of polls on Election Day.