UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONNA BRANDENBURG,

Plaintiff,

v

MICHIGAN BOARD OF STATE CANVASSERS, JOCELYN BENSON, in her official capacity as Secretary of State and JONATHAN BRATER, in his official capacity as Director of the Bureau of Elections,

Defendants.

No. 1:22-cv-00569

HON. HALA Y. JARBOU

MAG. PHILLIP J. GREEN

Daniel J. Hartman (P52632)
Attorney for Plaintiff
P.O. Box 307
Petoskey, Michigan 49770
231.348.5100

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov
grille@michigan.gov

**STATE DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS**

# TABLE OF CONTENTS

Page


Table of Contents ..... i

Index of Authorities ..... ii

Concise Statement of Issue Presented ..... v

Introduction ..... 1

Statement of Facts ..... 1

Standard of Review ..... 2

Argument ..... 3

I. This Court lacks subject-matter jurisdiction because this case no longer presents a live controversy and thus must be dismissed. ..... 3

II. Plaintiff fails to state a claim with respect to her federal constitutional claims and thus the claims must be dismissed. ..... 6

A. Plaintiff's claims under the Due Process Clause fail. ..... 6

1. Procedural due process ..... 6

2. Substantive due process. ..... 12

B. Plaintiff's claims under the Equal Protection Clause fail. ..... 13

III. Plaintiff fails to state a claim with respect to her state constitutional claims and thus the claims must be dismissed. ..... 15

Conclusion and Relief Requested ..... 17

## INDEX OF AUTHORITIES

Page

**Cases**

*Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005)........ 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................ 3, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 2, 3

*Bullock v. Carter*, 405 U.S. 134 (1972)............................................................ 7

*Carey v. Piphus,* 435 U.S. 247 (1978)............................................................. 6

*Church of Scientology v. United States,* 506 U.S. 9 (1992)................................ 3

*Ctr. For Bio Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) ........ 13

*Davis v. Detroit Pub. Sch. Cmty. Dist.*, 2017 U.S. Dist. LEXIS 114749 (E.D. Mich., July 24, 2017).......................................................................... 12

*DeFunis v. Odegaard*, 416 U.S. 312 (1974)....................................................... 4

*Fed. Election Comm'n v. Wis. Right To Life, Inc.,* 551 U.S. 449 (2007)..................... 5

*Ford v. Wilder*, 469 F.3d 500 (6th Cir. 2006).................................................... 4

*Hopkins v. Michigan Parole Board*, 604 N.W.2d 686 (1999) ................................ 15

*Johnson v. Secretary of State, et al*, 2022 WL 1787359 (Mich. Ct. App., June 1, 2022) .................................................................................................. 11

*Jon Jon's Inc. v. City of Warren*, 162 F. Supp.3d 592 (E.D. Mich. 2016) ................. 12

*Judicial Attys Ass'n v. State*, 586 N.W.2d 894 (1998) .......................................... 15

*Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989)................................... 6

*Kowall v. Benson*, 18 F. 4th 542 (6th Cir. 2021)................................................. 14

*Los Angeles County v. Davis,* 440 U.S. 625 (1979) ............................................. 3

*McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453 (6th Cir. 1997)........... 3

*Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 673 (M.D. Tenn.)................................................................................................. 7

*Miller v. Lorain Cnty. Bd. of Elections*, 141 F.3d 252 (6th Cir. 1998) ........................ 7

*Mosely v. Hairson*, 920 F.2d 409 (6th Cir. 1990) ..................................................... 4, 5

*Newsom v. Golden*, No. 3:22-CV-00318, 2022 WL 1500860 (M.D. Tenn. May 12, 2022) ................................................................................................................ 7

*Okrie v. State of Mich.*, 857 N.W.2d 254 (2014)......................................................... 15

*Olim v. Wakinekona*, 461 U.S. 238 (1983) .................................................................. 8

*Sain v. Mitchell*, No. 07-CV-1187, 2009 WL 1457722 (W.D. Tenn. May 22, 2009) ............................................................................................................... 8

*Snowden v. Hughes*, 321 U.S. 1 (1944) ....................................................................... 7

*Socialist Workers Party v. Secretary of State*, 317 N.W.2d 1 (1982) .......................... 16

*Taylor v. Currie*, 743 N.W.2d 571 (2007) .................................................................. 16

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008) ........................................................................................ 2, 3

*Wilkinson v. Austin*, 545 U.S. 209 (2005) ................................................................... 6

**Statutes**

Mich. Comp. Laws § 168.552(8) ............................................................................ 11, 13

Mich. Comp. Laws § 168.552(9) .................................................................................. 11

Mich. Comp. Laws § 168.544c(8)................................................................................. 10

Mich. Comp. Laws § 168.552 (10) .................................................................................. 9

Mich. Comp. Laws § 168.552(11) ................................................................................... 9

**Rules**

Fed. R. Civ. P. 10(c) ....................................................................................................... 2

Fed. R. Civ. P. 12(b)(1).................................................................................................... 2

Fed. R. Civ. P. 8(a)(2)..................................................................................................... 3

**Constitutional Provisions**

Mich. Const., Art. 2, § 4(2) ........................................................................ 14

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Should Plaintiff's complaint be dismissed because her claims are moot, or alternatively because Plaintiff has failed to state a claim upon which relief may be granted?

## INTRODUCTION

Plaintiff Donna Brandenburg was a Republican gubernatorial candidate who failed to obtain access to Michigan's August 2022 primary ballot due to the submission of thousands of fraudulent signatures.

After being denied relief by the Michigan Supreme Court, Plaintiff filed a complaint and motion for injunctive relief in this Court. But her complaint comes well-after the Secretary of State's June 3 certification of candidates, including gubernatorial candidates, to Michigan's 83 counties, and after absent voter ballots have been printed and distributed to over a million voters.[1] At this point, there is no effective relief this Court could provide that would enable Plaintiff to become a candidate in the August primary, and her claims are moot.

But even if this Court were inclined to review the substance of her claims, Plaintiff has failed to state a claim as to each of her federal and state constitutional claims. Thus, her complaint must be dismissed for this reason as well.

## STATEMENT OF FACTS

Defendants Michigan Board of State Canvassers, Secretary of State Jocelyn Benson and Director of Elections Jonathan Brater set forth the facts underlying this case in detail in their response in opposition to Plaintiff's motion for a preliminary injunction. (ECF No. 15, Defs' Brf, PageID.298, 306-321.) Defendants adopt and

---

[1] Indeed, recent data reveals that over one million voters have requested and received absent voter ballots already. *See*, Three weeks remain until statewide primary election, 7/12/22, available at https://www.michigan.gov/sos/resources/press-releases/2022/07/12/three-weeks-remain-until-statewide-primary-election.

incorporate that statement along with the exhibits to Defendants' response herein. Fed. R. Civ. P. 10(c).

With respect to the proceedings in the instant case, Plaintiff filed her complaint and motion seeking injunctive relief on June 21, 2022. (ECF No. 1, PageID.1; ECF No. 3, PageID.208; ECF No. 4, PageID.220.) Defendants were served with the pleadings on June 24, 2022. This Court ordered that Defendants respond to Plaintiff's motion for injunctive relief, (ECF No. 7, PageID.280), which Defendants did on June 29, 2022. (ECF No. 15, PageID.298). On July 7, 2022, this Court issued an opinion and order denying Plaintiff's motion for a preliminary injunction. (ECF No. 19, Opinion & Order, PageID.1491.)

Defendants now timely move to dismiss this case for the reasons set forth below.[2]

**STANDARD OF REVIEW**

Where a case is moot, the court lacks subject-matter jurisdiction and dismissal should be granted under Fed. R. Civ. P. 12(b)(1).

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, although the Court should presume that all well-pleaded material allegations of the complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions,

---

[2] Defendants inquired as to whether Plaintiff would consider voluntarily dismissing this lawsuit in light of the Court's prior opinion and without the need for a motion. But Plaintiff's counsel did not respond.

and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). Moreover, the court need not accept as true legal conclusions or unwarranted factual inferences. *Total Benefits*, 552 F.3d at 434.

To survive dismissal, the plaintiff's claim must be plausible. *Bell Atl. Corp.,* 550 U.S. at 555. The inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in evaluating the sufficiency of a plaintiff's pleadings, this Court may make reasonable inferences in the non-moving party's favor, "but [this Court is] not required to draw [P]laintiffs' inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

## ARGUMENT

### I. This Court lacks subject-matter jurisdiction because this case no longer presents a live controversy and thus must be dismissed.

Plaintiff's claims are moot and must be dismissed. In general, a federal court has a continuing duty to ensure that it adjudicates only genuine disputes between adverse parties, where the relief requested would have a real impact on the legal interests of those parties. *See Church of Scientology v. United States,* 506 U.S. 9, 12 (1992); *McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453, 458 (6th Cir. 1997) (en banc). If "the issues presented are no longer live or the parties lack a

legally cognizable interest in the outcome," then the case is moot and the court has no jurisdiction. *Los Angeles County v. Davis,* 440 U.S. 625, 631 (1979). A "live" controversy is one that "persists in 'definite and concrete' form even after intervening events have made some change in the parties' circumstances." *Mosely v. Hairson*, 920 F.2d 409, 414 (6th Cir. 1990) (citing *DeFunis v. Odegaard*, 416 U.S. 312, 317 (1974)); *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006) ("The test for mootness is whether the relief sought would, if granted, make a difference to the legal interests of the parties.") (internal quotation marks and citation omitted).

In her complaint, Plaintiff seeks a declaration as to the duties of the Defendants in relation to her nominating petition and that the State Defendants violated her various rights under the federal and state constitutions in processing her petition. (ECF No. 1, PageID.34-35, ¶¶ A-G). Among other relief, Plaintiff requests that the Court "order Donna Brandenburg be certified and appear on the August 2, 2022, Primary Ballot for the Republican Party[.]" (*Id.,* ¶ E.)

But here, there is no live controversy. Plaintiff's legal claims are all grounded in alleged errors or irregularities in how the Bureau of Elections, pursuant to state law and under the direction of Defendant Brater, canvassed Plaintiff's nominating petition on behalf of Defendant Board of Canvassers, and the Board's resulting deadlock at its May 26, 2022 meeting and failure to certify Plaintiff's petition as sufficient to place her on the August 3, 2022 primary ballot. Because her petition was not certified as sufficient, Plaintiff's name was not on the slate of primary candidates Defendant Benson certified on June 3, 2022. And as

discussed in Defendants' response to the injunction motion, ballots have already been printed and distributed, so it is too late for any relief adding her to the primary ballot. (ECF No. 15, PageId.322-327.) Indeed, this Court observed in its opinion denying injunctive relief that it was too late to order any relief related to the August primary. (ECF No. 19, PageID.1502.)

Plaintiff's claims are no longer live since the slate of candidates for the August 2022 primary has already been certified and absent voter ballots printed and sent out to hundreds of thousands of voters already. These intervening events have changed the parties' circumstances. Indeed, even if this Court was inclined to grant declaratory relief, it would not make a difference to the legal interests of the parties. If Plaintiff wishes to run for Governor in four years, she will have to circulate a new nominating petition and gather new signatures. And there can be no reasonable expectation that Plaintiff will again experience the unprecedented fraud that occurred in this primary election cycle, which required Defendants to adapt their process. See, e.g., *Fed. Election Comm'n v. Wis. Right To Life, Inc.,* 551 U.S. 449, 463-64 (2007) (discussing exception to mootness requirements). There simply is no practical or effective relief this Court can provide to Plaintiff. Accordingly, there is no "live" controversy remaining as to Plaintiff's claims concerning the August 2, 2022, primary election. *Mosely*, 920 F.2d at 414. Plaintiffs' claims are now moot and should be dismissed.

## II. Plaintiff fails to state a claim with respect to her federal constitutional claims and thus the claims must be dismissed.

Even if this Court were to disagree that this case is moot, Plaintiff has failed to state claims upon which relief may be granted with respect to her due process and equal protection claims. Indeed, this Court already concluded as much in its opinion denying Plaintiff's request for injunctive relief. (ECF No. 19, PageID.1494-1500.)

### A. Plaintiff's claims under the Due Process Clause fail.

Plaintiff alleges in Count II of her complaint that Defendants violated her right to procedural and substantive due process under the federal and state constitutions in connection with the procedures Defendants used to canvass Plaintiff's petition and determine it contained insufficient signatures to warrant certification. (ECF No. 1, PageID.27-30.) These arguments are without merit.[3]

#### 1. Procedural due process

A procedural due process analysis contains two questions: "the first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or

---

[3] In Count I of her complaint, Plaintiff requests "Declaratory and Injunctive Relief." (ECF No. 1, PageID.26.) But where Plaintiff has not demonstrated any likelihood of success on her substantive claims, she is not likewise not entitled to declaratory relief.

unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259 (1978).

For the first question, a protected right may arise from the federal Constitution itself, or through "an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "The range of deprivations implicating a cognizable state-created liberty interests is narrow." *Memphis A. Phillip Randolph Inst. v. Hargett*, 482 F. Supp. 3d 673, 686 (M.D. Tenn.), *aff'd on other grounds* 978 F.3d 378 (6th Cir. 2020); *see also id.* at 687 ("[I]t is no small thing for a court to say that something is a cognizable liberty interest, such that procedural due process is applicable.").

But Brandenburg has not demonstrated that she has a cognizable liberty interest that is protected by procedural due process. In fact, the Supreme Court has held that "an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause." *Snowden v. Hughes*, 321 U.S. 1, 7 (1944). This binding precedent is fatal to Plaintiff's procedural due process claim. *See also Newsom v. Golden*, No. 3:22-CV-00318, 2022 WL 1500860, at *7 (M.D. Tenn. May 12, 2022) (collecting cases); *cf. Bullock v. Carter*, 405 U.S. 134, 142-43 (1972) ("[T]he Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review.").

The Sixth Circuit has on one occasion claimed it "is not clear" "whether an individual has a constitutionally protected interest in becoming a candidate for

public office," and that "candidacy *may* involve some level of a protected property or liberty interest." *Miller v. Lorain Cnty. Bd. of Elections*, 141 F.3d 252, 260, 260 n.8 (6th Cir. 1998). That dictum is not only in tension with *Snowden*, 321 U.S. at 7, it was not a holding of the Sixth Circuit. Even assuming there was a lack of clarity, this is a § 1983 action, requiring a violation of *clearly established* constitutional rights. Therefore, even if this Court were to determine that there is a liberty interest in candidacy contrary to Supreme Court precedent, Plaintiff's claim would fail because such a right was not clearly established. *See, e.g., Sain v. Mitchell*, No. 07-CV-1187, 2009 WL 1457722, at *6 (W.D. Tenn. May 22, 2009), aff'd, 376 F. App'x 582 (6th Cir. 2010).

Even assuming that such a right was clearly established, Plaintiff has not established that she received an unconstitutionally deficient amount of process. "Process is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

It is worth observing that Plaintiff likely could have avoided many of the errors on her petition had she exercised any of the Bureau's recommended petition quality control practices. (*See* ECF No. 15-2, Ex A, Brater Aff, PageID.372-73, ¶¶ 72-76.) Plaintiff nevertheless argues that she has a right to have the Defendant Board of Canvassers consider her missing supplemental signatures. (ECF No. 1, Comp., PageID.28, ¶¶ 102(a)-(b).) The Bureau and the Board do not have a specific process for considering signatures that are discovered after the Board has concluded the canvass and met to certify candidates, since such events are extremely rare. It is correct that the Board was not presented with the Bureau's result of its canvass

of her supplemental filing. (*See* ECF No. 15-2, Ex. A, Brater Aff., PageID.381-84, ¶¶ 101-111.) But the supplemental signatures were, in fact, canvassed by the Bureau employing the same process it did for Plaintiff's initial filing, and revealed both fraudulent and non-fraudulent signatures. *Id.* Further, as the Director observed, even if all 6,198 supplemental signatures were deemed valid, Plaintiff was still short of the 15,000 she needed for certification. *Id.*, ¶ 111. And in that case, presenting the canvass of the supplemental signatures to the Board would not likely have changed the Board's 2-2 deadlock.

Plaintiff also complains that she had insufficient notice of the problems with her petition as outlined in her staff report, which was provided to Plaintiff the evening of May 23. (ECF No. 1, Compl., PageID.28, ¶¶ 78-86, 102(c).) As for timing, arguably it is a tight schedule for both Bureau staff and candidates, but that is principally a function of the statutes controlling the filing deadline and the time by which the Board must act. Staff reports to address insufficiency issues and challenges to petitions are required by statute to be released *two* days before the Board's hearing on the sufficiency of petitions. Mich. Comp. Laws § 168.552 (10), (11). Here, the Bureau released the staff reports, including the Fraud Staff Report and Plaintiff's individual report, during the evening of the *third* day before the May 26 scheduled meeting. And the latest the Board could have met to finish the canvass was May 31 and the latest the Board could meet to declare the sufficiency of petitions was June 3. Mich. Comp. Laws § 168.552(9), (11). But waiting for these

later dates was not realistic as it would not have provided any time for court proceedings.

Moreover, Plaintiff should have been on notice of the fraud affecting her petition. As noted by Director Brater, a challenge filed to candidate Craig's petition on April 26, 2022 alleged significant fraud and identified specific circulators, who also gathered signatures for Plaintiff. (*See* ECF No. 15-2, Ex. A, Brater Aff, PageID.376, ¶¶ 87-88.) This challenge was covered widely in the press. *Id.* Plaintiff could have compared the Craig circulators with names on her petition sheets. *Id.*, ¶ 88. Furthermore, Director Brater had publicly clarified at a May 2, 2022 Board meeting that the Bureau was going to review all sheets submitted by any candidate for indications of similar fraud. *Id.*, ¶ 90.

And Plaintiff had an opportunity to be heard. The Board meeting on May 26 *was* a hearing at which Brandenburg could have presented testimony and evidence to refute the Bureau's findings and determinations set forth in the staff report. As explained by Director Brater, Plaintiff had numerous methods of presenting evidence showing that at least some of the signatures submitted by the fraudulent circulators were valid. *Id.*, ¶ 81. For example, Plaintiff could have contacted the circulators to check if they collected real signatures, she could have obtained a copy of the QVF to check to see if any fraudulent signatures corresponded with registered voters, *etc.* *Id.*, ¶¶ 82-83. But Plaintiff made no effort to submit any evidence at the May 26 meeting, *id.*, ¶ 91, and still has not.

Plaintiff complains that she did not have notice that the Bureau and the Board were adapting their canvassing process and were not going to check every signature determined to be fraudulent against the QVF. (ECF No. 1, Compl., PageID.28-29, ¶¶ 102(d)-(e), (h)-(i).) But Mich. Comp. Laws § 168.552(8) and (13), read together and in conjunction with Mich. Comp. Laws § 168.544c(8), (10), (11), do not require the Bureau (for the Board) to check every signature on a petition sheet against the Qualified Voter File to determine its genuineness before determining it invalid. *See Johnson v. Secretary of State, et al*, 2022 WL 1787359 (Mich. Ct. App., June 1, 2022) at * 7-9, aff'd 914 N.W.2d 235 (Mich. 2022).

Finally, Plaintiff appears to argue that the Bureau and the Board did not have authority, as part of its canvass, to review the genuineness of signatures in the absence of a "sworn complaint" challenging Plaintiff's petition submitted under Mich. Comp. Law § 168.552(8). (ECF No. 1, Compl., PageID.29, ¶¶ 102(f)-(g).) But under § 552(8), "the board of state canvassers shall canvass the petitions to ascertain if the petitions have been *signed by the requisite number of qualified and registered electors*." (Emphasis added). The canvassing duty includes reviewing whether those who signed a petition are registered voters and whether the signatures are genuine. Indeed, the Board may cause a "doubtful signature to be checked against the qualified voter file," which includes doubt as to registration status and the genuineness of a signature. *Id.* Moreover, the Board may "conduct an investigation" of petitions "for a purpose considered necessary." *See* Mich. Comp. Law § 168.552(9). The suggestion that the Board cannot, as part of its canvass,

review the genuineness of signatures on a petition to determine whether the petition has, in fact, been signed by a sufficient number of valid registered electors is without merit.

Here, Brandenburg was provided with adequate notice, and an opportunity to be heard commensurate with the relevant statutes, and factual circumstances, and was in fact heard. Indeed, Judge Goldsmith recently rejected very similar arguments from another disappointed candidate. *See Johnson v. Michigan Board of State Canvassers*, 2022 WL 2116091 at * 6-8. Accordingly, Plaintiff's due process rights were not violated, and so she has not demonstrated a substantial likelihood of success on this claim.

**2. Substantive due process.**

The Supreme Court has never recognized the right to vote as a right qualifying for substantive due process protection. *Davis v. Detroit Pub. Sch. Cmty. Dist.*, 2017 U.S. Dist. LEXIS 114749, *37 (E.D. Mich., July 24, 2017) (quoting *Philips v. Snyder*, 2014 U.S. Dist. LEXIS 16097, *16 (E.D. Mich., November 19, 2014)). Instead, the Supreme Court has held that "[w]here a particular Amendment provides an explicit source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Jon Jon's Inc. v. City of Warren*, 162 F. Supp.3d 592, 605 (E.D. Mich. 2016) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Here, to the extent Plaintiff is alleging a substantive due process claim, such a claim is better addressed under a procedural due process theory or equal protection.

**B. Plaintiff's claims under the Equal Protection Clause fail.**

In Count V, Plaintiff alleges a violation of the Equal Protection Clause. (ECF No. 1, PageID.32.) Plaintiff alleges that "[m]embers of the same party were provided different standards for the application of the determination of the genuineness of signatures," because her signatures were reviewed by the Bureau without a "sworn complaint" being filed against her petition. *Id.*, PageID.32, ¶¶ 118-119. This claim fails.

A valid equal-protection claim requires showing "that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.' " *Ctr. For Bio Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted).

Here, Plaintiff was not treated differently. First, Plaintiff's claim is premised on an incorrect theory that the Bureau, on behalf of the Board, can only examine signatures on a petition for genuineness if a challenge, or "sworn complaint" is filed by a person against a candidate's petition. *See* Mich. Comp. Law § 168.552(8). As discussed above, under § 552(8), "the board of state canvassers shall canvass the petitions to ascertain if the petitions have been *signed by the requisite number of qualified and registered electors*." (Emphasis added). The canvassing duty includes reviewing whether those who signed a petition are registered voters and whether

the signatures are genuine. Indeed, the Board may cause a "doubtful signature to be checked against the qualified voter file," which includes doubt as to registration status and the genuineness of a signature. *Id.* Second, Plaintiff's petition was treated the same as Republican gubernatorial candidates Michael Brown and Michael Markey's nominating petitions were. Brown and Markey were also candidates affected by the fraudulent circulators, but no "challenge" or "sworn complaint" was filed as to either petition. (*See* ECF No. 15-2, Ex. A, Brater Aff., PageID.412-443, Appendix 3, Brown & Markey Staff Reports.) But their petitions were canvassed under the modified process that also involved looking at signatures just like all the other gubernatorial candidates, to which challenges were filed. *Id.* Indeed, as explained in the Staff Report on Fraudulent Nominating Petitions, all petitions in which indicators of fraud appeared were canvassed under the same process, whether they were gubernatorial candidates or otherwise, and whether a challenge was filed to a petition or not. (*Id.*, Ex A, Brater Aff., PageID.394, Appendix 2.)[4] Because Plaintiff was not treated disparately from any other Republican gubernatorial candidate, she is unlikely to succeed on the merits of her equal protection claim.

---

[4] There were several judicial candidates affected by the fraudulent circulators as well. (*See* Ex. A, Brater Aff., Appendix 3, PageID.412-443, Dare & Cavanagh Staff Reports.)

### III. Plaintiff fails to state a claim with respect to her state constitutional claims and thus the claims must be dismissed.

In Count III, Plaintiff purportedly alleges a violation of Michigan's constitutional "purity of elections" clause, Mich. Const., Art. 2, § 4(2). (ECF No. 1, PageID.30, ¶¶ 105-110.) And in in Count IV, Plaintiff alleges a violation of Michigan's separation of powers clause, Mich. Const., Art. 3, § 2. (ECF No. 1, PageID.30, ¶¶ 111-114.) But where Plaintiff's federal claims are unlikely to succeed on the merits, as discussed above, this Court should decline to exercise jurisdiction over these claims. *See, Kowall v. Benson*, 18 F. 4th 542, 549 (6th Cir. 2021) (vacating district court's decision on state constitutional claims and remanding for dismissal of those claims).[5] Indeed, this Court previously indicated it would decline to exercise jurisdiction over Plaintiff's state law claims. (ECF No. 19, PageID.1500.) Even so, the claims are without merit.

With respect to Plaintiff's separation of powers argument, she appears to argue that the Board, an executive branch agency, exercised legislative power when it and the Bureau adapted the canvassing process to deal with the unprecedented fraud facing the Bureau and the Board. *See, e.g., Okrie v. State of Mich.*, 857 N.W.2d 254, 261 (2014) ("[T]he legislative branch makes the laws, the executive branch executes them, and the judicial branch interprets and applies them in cases properly before the courts.") Here there was no overreach.

---

[5] In what should be labeled Count VII, Plaintiff alleges some other state constitutional claim that is incomprehensible. (ECF No. 1, PageID.34.) This count clearly does not survive review under *Iqbal*, 556 U.S. at 679.

The separation of powers doctrine does not prohibit any overlap of functions and powers, *see Hopkins v. Michigan Parole Board*, 604 N.W.2d 686 (Mich. Ct. App. 1999), and the power of each branch includes managerial administrative authority to carry out its operations, see *Judicial Attys Ass'n v. State*, 586 N.W.2d 894, 896 (1998). Under subsection § 552(8) the Board has a duty to canvass nominating petitions. But the statute does not prescribe any specific process for conducting the canvass, although the Bureau and the Board have employed a standard procedure for decades. (ECF No. 15-2, Ex A, Brater Aff, PageID.349-353, ¶¶ 10-24.) In the course of its canvass of the various nominating petitions, Bureau staff identified obvious fraudulent activity and thousands of forged or otherwise invalid signatures. Bureau staff investigated this fraudulent activity on behalf of the Board, adapting its canvassing process to best determine the scope of the fraud as to the affected candidates within the limited resources and time available for the Board's canvass. *Id.*, PageID.353-365, ¶¶ 25-54. In doing so, Defendants did not violate the separation of powers clause, and Plaintiff's claim fails.

Turning to the "purity of elections" clause claim, the Michigan Supreme Court has interpreted the clause to embody two concepts:

> [F]irst, that the constitutional authority to enact laws to preserve the purity of elections resides in the Legislature; and second, 'that any law enacted by the Legislature which adversely affects the purity of elections is constitutionally infirm.'" The phrase "purity of elections" "requires . . . fairness and evenhandedness in the election laws of this state."

*Taylor v. Currie*, 743 N.W.2d 571, 578 (2007) (internal citations omitted.) "[O]ne of the primary goals of election procedures is to achieve *equality of treatment for all*

*candidates* whose names appear on the ballot." *Socialist Workers Party v. Secretary of State*, 317 N.W.2d 1, 11 (1982) (emphasis added.)

Plaintiff's complaint does not challenge the authority of the Legislature to make any particular enactment, and she also does not point to any law enacted by the Legislature that "adversely affects" the purity of elections so as to be constitutionally infirm. Moreover, as discussed above, Plaintiff's allegation that she was treated *differently* under the modified canvassing process is infirm. Indeed, all candidates were subject to the same processes outlined above with regard to the fraudulent circulators and the targeted checks. Plaintiff fails to make allegations sufficient to establish that any election laws of this state are invalid, and so her claim in Count IV under the "purity of elections" clause fails to state a claim.

## CONCLUSION AND RELIEF REQUESTED

For the reasons discussed above, the State Defendants respectfully request that this Court grant their motion to dismiss.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: meingasth@michigan.gov
(P55439)

Dated: July 15, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2022 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Attorney for Defendant
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: meingasth@michigan.gov
(P55439)